J. S02011/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
 : PENNSYLVANIA
 v. :
 :
JERMAINE DUPREE, : No. 1322 EDA 2016
 :
 Appellant :


Appeal from the Judgment of Sentence, March 31, 2016,
in the Court of Common Pleas of Delaware County
Criminal Division at No. CP-23-CR-0005104-2015


BEFORE: FORD ELLIOTT, P.J.E., STABILE AND MOULTON, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED FEBRUARY 28, 2017**

Jermaine Dupree appeals from the judgment of sentence of March 31, 2016, following his conviction of robbery, criminal conspiracy, and related charges. We affirm.

The trial court has aptly summarized the history of this case as follows:

> On June 12, 2015, Adam Rothley, "herein Mr. Rothley" was walking back to his home in Drexel Hill, Delaware County, after [he] was leaving a local sports bar. Mr. Rothley took his normal route home along the SEPTA trolley tracks. As Mr. Rothley approached the eastbound platform at Creek Road, he noticed three men across the way congregated by the westbound platform. When Mr. Rothley approached a telephone pole with a street light on it, on Creek Road, he heard footsteps coming from behind him. Mr. Rothley turned around, and saw three males running toward him with shirts wrapped around their faces; one of the males pointed a gun

toward Mr. Rothley. While one of the men held a gun at him, another man rummaged through Mr. Rothley's pockets, taking a cell phone, cell phone charger, cigarettes, and a lighter. After the incident, Mr. Rothley headed home via Creek Road. When Mr. Rothley arrived on his block, Dennison Avenue, he immediately called the police from the cellphone of his neighbor who was standing outside of her home.

Within minutes of Mr. Rothley's phone call, Officer Marvil[Footnote 1] arrived at Dennison Avenue.[Footnote 2] Shortly thereafter, Mr. Rothley accompanied Officer Marvil to the Upper Darby Police Station, where he gave a statement regarding the incident to Detective George.[Footnote 3] While Detective George was taking the statement, Officer Marvil requested that Mr. Rothley accompany him to where three suspects were apprehended to see if an identification could be made. The officer had Mr. Rothley climb into the back of a police issued SUV, where Mr. Rothley made the identification by way of peering through the front windshield. Spotlights were pointed at the suspects during this identification. The first individual that Mr. Rothley identified was the Appellant, Jermaine Dupree[Footnote 4], hereinafter "Appellant." Mr. Rothley's identification was based on the clothing that Appellant was wearing and a shirt that was hanging on his shoulder, which Mr. Rothley asserted was wrapped around Appellant's face during the robbery. Further, Mr. Rothley identified Appellant as the man who pointed the gun in his face.

> [Footnote 1] At the time of trial, Officer Marvil had been a police officer for eleven years and worked as [a] patrolman for Upper Darby Township for the [sic] a year and a half.

> [Footnote 2] When he arrived at 3930 Dennison Avenue, Officer Marvil gathered information from Mr. Rothley about the robbery; after getting the

location and a description of the individuals involved, Officer Marvil broadcasted the information over police radio.

[Footnote 3] At the time of trial, Detective George had been a police officer for fifteen years, and had been serving as a criminal investigator with Upper Darby Township for three years.

[Footnote 4] It was later discovered that Appellant's real name is Sydney Mondi Duopu. Because Appellant identified himself to police and was subsequently charged as "Jermaine Dupree," he will be referred to as Jermaine Dupree, consistent with police paperwork and the court docket sheets.

Officer Thomas Gallo is currently employed as a police officer in Clifton Heights Borough and has been so employed for the past twelve years. On June 12, 2015, Officer Gallo was working in that capacity when he received a radio call stating that there was a robbery of a pedestrian in the area of Bridge and Dennison Streets, which is adjacent to Clifton Heights. At approximately 11:30 p.m., Officer Gallo observed three men fitting the description from the radio call, in the area of Broadway and Marple Avenues in Clifton Heights. Subsequently, Officer Gallo stopped the three men, asking them to provide him with their identifications. Two of the individuals, Maxim Daniels and Robert Kolbrenner, provided Officer Gallo with Pennsylvania Identification.[Footnote 5] During this encounter, Officer Gallo recovered two cells [sic] phones, a cell phone charger and a lighter. Additionally, the officer retrieved, what appeared to be a black handgun from Mr. Kolbrenner's waistband.[Footnote 6] Later that evening, when Mr. Rothley was back at the police station with Detective George, he identified[] the cellphone charger, a pack of cigarettes and the lighter, as

being items that were taken from him in the earlier robbery.

> [Footnote 5] Maxim Daniels and Robert Kolbrenner were arrested and charged as co-defendants with Appellant in this matter. On December 10, 2015, Robert Kolbrenner entered a negotiated guilty plea with the Commonwealth. Maxim Daniels stood trial with Appellant and [was] found guilty on two of the five counts with which he was charged. The focus of this opinion is on the Appellant.

> [Footnote 6] After further investigation, officers discovered that this was actually a pellet gun, but that as the entire pellet gun was painted black, including the orange tip, that it looked almost identical to a Colt 1911 model handgun.

Trial court opinion, 6/22/16 at 1-3 (citations to the transcript omitted; punctuation corrected).

> Appellant was arrested on June 13, 2015. A jury trial commenced on February 22, 2016, and concluded on February 23, 2016. The Commonwealth proceeded on: Count 1: Robbery Threatens Immediate Serious Bodily Injury[Footnote 7]; Count 2: Robbery Threatens Bodily Injury[Footnote 8]; Count 5: Possession of an Instrument of Crime[Footnote 9]; Count 10: Criminal Conspiracy to Robbery Threatens Immediate Serious Bodily Injury with Maxim Daniels[Footnote 10]; Count 11: Criminal Conspiracy to Robbery Threatens Bodily Injury with Maxim Daniels[Footnote 11]. The Commonwealth presented testimony from Adam Rothley, Officer Gallo, Officer Marvil and Detective George, all of whom testified to the facts as outlined above. With the admission of several exhibits and stipulations, the Commonwealth rested.

[Footnote 7] 18 [Pa.C.S.A.] § 3701 [] A1[ii][.]

[Footnote 8] 18 [Pa.C.S.A.] § 3701 [] A1[iv][.]

[Footnote 9] 18 [Pa.C.S.A.] § 907 [] A[.]

[Footnote 10] 18 [Pa.C.S.A.] § 903[.]

[Footnote 11] 18 [Pa.C.S.A.] § 903[.]

Appellant did not testify, but presented alibi testimony from Michael Simbo. On direct examination, Mr. Simbo testified that he had been a friend of Appellant for eleven years. Mr. Simbo further testified that on June 12, 2015, he had been with Appellant at a mutual friend's home, and that they played video games and watched movies until approximately 9:50 p.m. when Mr. Simbo needed to go home. With the admission of several exhibits, counsel for Appellant rested.

After deliberations, the jury found Appellant guilty on all five counts. On March 31, 2016, this Court sentenced Appellant as follows: Count 1: 50-100 months in SCI followed by three years['] consecutive probation; Count 2: merged with Count 1 for sentencing purposes; Count 10: 36-72 months in SCI concurrent to Count 1; Count 11:[] merged with Count 10 for sentencing purposes; Count 5: one year probation consecutive to Count 1.[Footnote 12]

[Footnote 12] This Court applied the deadly weapon enhancement [("DWE")].

On April 28, 2016, Appellant filed a notice of Appeal.[1] [On May 4, 2016,] [t]his Court issued a [Pa.R.A.P.] 1925(b) request, which counsel filed on May 25, 2016.

---

[1] Appellant did not file post-sentence motions.

*Id.* at 3-5 (citations to the transcript omitted).

Appellant has raised the following issues for this court's review, challenging the legality of his sentence:

> [1.] When the Trial Court pronounced sentence it was required to make a determination on whether RRRI [(Recidivism Risk Reduction Incentive)] was applicable. The trial court simply stated[,] "you are not RRRI or boot camp eligible." This statement does not constitute a determination, therefore the sentence is illegal.
>
> [2.] It was error to apply the [DWE] because the minimum component increased without a jury determination, implicating [***Alleyne v. United States***, ___ U.S. ___, 133 S.Ct. 2151 (2013)]. The sentencing guidelines minimum range changed from 32 to 42 months to 48 to 60 months.

Appellant's brief at 7 (citation to the sentencing transcript omitted; italics deleted).

In his first issue on appeal, appellant claims that his sentence was illegal because the trial court failed to adequately consider whether he was eligible for an RRRI minimum sentence. (Appellant's brief at 10.) Appellant complains that the trial court simply presumed his ineligibility without adequate deliberation or explanation. (*Id.* at 10-13.)

> A challenge to a court's failure to impose an RRRI sentence implicates the legality of the sentence. ***Commonwealth v. Tobin***, 89 A.3d 663, 670 (Pa.Super. 2014). "It is legal error to fail to impose a[n] RRRI minimum on an eligible offender." *Id.* Thus, as "statutory interpretation implicates a question of law, our scope of review is plenary and

our standard of review is *de novo*." *Commonwealth v. Gerald*, 47 A.3d 858, 859 (Pa.Super. 2012) (citation omitted).

*Commonwealth v. Finnecy*, 135 A.3d 1028, 1033 (Pa.Super. 2016), *appeal denied*, 2016 WL 6093951 (Pa. Oct. 19, 2016).

The RRRI statute, which provides for a reduced RRRI minimum sentence for certain eligible offenders, states, in relevant part, as follows:

> This chapter seeks to create a program that ensures appropriate punishment for persons who commit crimes, encourages inmate participation in evidence-based programs that reduce the risks of future crime and ensures the openness and accountability of the criminal justice process while ensuring fairness to crime victims.

61 Pa.C.S.A. § 4502.

> At the time of sentencing, the court shall make a determination whether the defendant is an eligible offender.

61 Pa.C.S.A. § 4505(a).

> **"Eligible offender."** A defendant or inmate convicted of a criminal offense who will be committed to the custody of the department and who meets all of the following eligibility requirements:
>
> (1) Does not demonstrate a history of present or past violent behavior.
>
> (2) Has not been subject to a sentence the calculation of which includes an enhancement for the use of a deadly weapon as defined under law or the sentencing guidelines promulgated by the Pennsylvania Commission on Sentencing or the attorney for the

Commonwealth has not demonstrated that the defendant has been found guilty of or was convicted of an offense involving a deadly weapon or offense under 18 Pa.C.S. Ch. 61 (relating to firearms and other dangerous articles) or the equivalent offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation.

(3) Has not been found guilty of or previously convicted of or adjudicated delinquent for or an attempt or conspiracy to commit a personal injury crime as defined under section 103 of the act of November 24, 1998 (P. L. 882, No. 111),[Footnote 1] known as the Crime Victims Act, except for an offense under 18 Pa.C.S. § 2701 (relating to simple assault) when the offense is a misdemeanor of the third degree, or an equivalent offense under the laws of the United States or one of its territories or possessions, another state, the District of Columbia, the Commonwealth of Puerto Rico or a foreign nation.

[Footnote 1] 18 P.S. § 11.103.

61 Pa.C.S.A. § 4503. The legislature chose "to include Section 4503(1) as a broad, "catchall" provision designed to encompass an array of behavior not explicitly provided for in Section 4503's other provisions." *Commonwealth v. Chester*, 101 A.3d 56, 63 (Pa. 2014) (finding that first-degree burglary constitutes "violent behavior" as contemplated by Section 4503(1)).

Appellant was clearly not RRRI-eligible, as he had been convicted of robbery, a personal injury crime as defined by the Crime Victims Act, 18 P.S.

§ 11.103. In addition, a DWE applied to appellant's sentence, making him ineligible under 61 Pa.C.S.A. § 4503(2). Appellant also had a juvenile adjudication for terroristic threats, thereby demonstrating a history of past violent behavior. (Notes of testimony, 3/31/16 at 24.) In short, appellant was obviously statutorily ineligible for an RRRI minimum sentence, and the trial court did not err in refusing to impose one without further deliberation.

Next, appellant argues that application of the DWE was in violation of *Alleyne*, holding that any fact that, by law, increases the penalty for a crime is required to be treated as an element of the offense, submitted to a jury, rather than a judge, and found beyond a reasonable doubt. We disagree.

Application of the DWE to a defendant's sentence affects the guidelines calculation but does not increase the otherwise applicable statutory maximum, nor does it impose a mandatory minimum sentence. 204 Pa.Code § 303.10. Appellant's potential exposure was not increased as a result of the DWE, and the trial court remained free to impose a sentence outside the guidelines. The weapons enhancement provision of the guidelines only affects a defendant's minimum sentence, not the statutory maximum. Therefore, *Alleyne* and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), are not implicated. This court explained in *Commonwealth v. Buterbaugh*, 91 A.3d 1247 (Pa.Super. 2014) (*en banc*), *appeal denied*, 104 A.3d 1 (Pa. 2014), addressing the identical issue:

> While not raised by either party, we find it necessary
> to discuss our finding that Appellant's truck is a

deadly weapon in light of the United States Supreme Court's decisions in **Alleyne**[] and **Apprendi**[]. In both cases, the Supreme Court determined that certain sentencing factors were considered elements of the underlying crime, and thus, to comply with the dictates of the Sixth Amendment, must be submitted to the jury and proven beyond a reasonable doubt instead [of] being determined by the sentencing judge. However, this inquiry is not relevant to our case because of the nature of the DWE.

> **Alleyne** and **Apprendi** dealt with factors that either increased the mandatory minimum sentence or increased the prescribed sentencing range beyond the statutory maximum, respectively. Our case does not involve either situation; instead, we are dealing with a sentencing enhancement. If the enhancement applies, the sentencing court is required to raise the standard guideline range; however, the court retains the discretion to sentence outside the guideline range. Therefore, neither of the situations addressed in **Alleyne** and **Apprendi** are implicated.

**Id.** at 1270 n.10.

This claim fails.[2]

Judgment of sentence affirmed.

---

[2] We note that appellant does not argue that the DWE should not have applied where he used an air-propelled pellet gun rather than a firearm during the commission of the robbery, only that the triggering facts should have been found by a jury beyond a reasonable doubt.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017