J-S04046-16

2016 PA Super 41

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JAMES PAUL FINNECY, | |
| Appellant | No. 1871 WDA 2014 |

Appeal from the Judgment of Sentence October 7, 2014
In the Court of Common Pleas of Venango County
Criminal Division at No(s): CP-61-CR-0000498-2013
CP-61-CR-0000688-2009

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

OPINION BY BOWES, J.:                          **FILED FEBRUARY 18, 2016**

Appellant James Finnecy appeals from the aggregate judgment of sentence of twelve and one-half to twenty-five years incarceration.  After careful review, we affirm.

The instant appeal is the latest of Appellant's multiple appearances before the trial court relating to his underlying offenses.  Appellant was initially sentenced on January 22, 2010, to a maximum of two years incarceration for counts of unauthorized use of a motor vehicle and theft by unlawful taking, as well as two consecutive terms of 18 months probation for escape, resisting arrest, forgery, and identity theft.  Upon concluding his term of incarceration on October 26, 2011, Appellant was placed on Venango County Probation.  He was assigned to an officer on October 30, 2011, with a maximum date of supervision of October 26, 2014.  The next several

_____
* Retired Senior Judge assigned to the Superior Court.

months saw multiple probation violations and failed attempts at treatment for Appellant's recurring drug use, all supervised by the trial court. In response to his penultimate violation, the trial court revoked Appellant's probation and sentenced him to twelve to twenty-four months incarceration in the Venango County Jail. His subsequent conduct was summarized by the trial court as follows.

> On April 10, 2014, [Appellant] was released from Venango County Prison and paroled to the Oxford House located at 1417 Chestnut Street, Franklin, PA. Thereafter, [Appellant] began his drug and alcohol treatment with Venango County Substance Abuse program. [Appellant] also held employment for a short period of time at Venango County Steel. On May 30, 2014, a Special Field Report was prepared for Venango County Court requesting a bench warrant to declare [Appellant] an absconder. On June 4, 2014, a bench warrant was issued by Venango County Court. Constable Craig Westover and the Oil City Police Department arrested [Appellant] on July 6, 2014.

> On July 18, 2014, the Commonwealth filed a petition to revoke [Appellant's] probation/parole. On August 28, 2014, [Appellant] appeared at a hearing to determine whether his probation should be revoked. [Appellant] was represented by counsel, Jeffrey Misko, Esq. With the advice of counsel in open court, [Appellant] waived *Gagnon I* and proceeded to *Gagnon II*. At *Gagnon II*, [Appellant] admitted that while on parole and probation status[,] he changed his residence, failed to report, violated curfew, used crack cocaine, associated with drug users or dealers, and consumed alcohol. As these were material violations of the conditions of parole and probation, parole and probation were revoked. [Appellant] appeared for resentencing on October 7, 2014, and was sentenced to 12½ years to 25 years in a state institution of the Department of Corrections. [The trial court] determined at sentencing that [Appellant] was not RRRI eligible.

Trial court opinion, 11/18/14, at unnumbered pages 4-5 (emphasis added).

- 2 -

Appellant filed a 1925(b) concise statement of errors complained of on appeal, and the trial court declined to author a 1925(a) opinion, opting instead to rely upon its November 18, 2014 Opinion in which it denied Appellant's post-sentence motion. The matter is now ready for our review.[1]

Appellant levels three issues for our consideration:

1. Whether the trial court erred as a matter of law or abused its discretion in failing to order a pre-sentence investigation report (PSI) as required by Pennsylvania Rule of Criminal Procedure 702(A)(2)(A) as [Appellant] was facing a sentence of one year or more?

2. Whether the trial court erred as a matter of law or abused its discretion in determining that [Appellant] is not eligible for the Recidivism Risk Reduction Incentive (RRRI) program and, therefore, denying his eligibility for said program?

3. Whether the trial court allowed bias, prejudice or ill will in crafting an emotionally motivated sentence that was manifestly unreasonable in relation to the previous sentences related to [Appellant] in these cases and whether the sentence imposed by this Honorable Court is contrary to the fundamental norms underlying the sentencing process?

Appellant's brief at unnumbered page 1.

Appellant's first and third issues challenge the discretionary aspects of his sentence. He must therefore petition for permission to appeal those

_____

[1] While we have the benefit of a thoughtful opinion from the Honorable Robert Boyer to inform our disposition, we note that the Commonwealth declined to file a brief in this matter. We regret that the Venango County District Attorney did not see fit to weigh in on this issue, which had not previously been addressed in a published decision by this Court and has recently been examined in reference to another offense by the Pennsylvania Supreme Court.

issues, as "the right to pursue such a claim is not absolute."

***Commonwealth v. Rhoades***, 8 A.3d 912 (Pa.Super. 2010).  Additionally,

> When challenging the discretionary aspects of the sentence imposed, an appellant must present a substantial question as to the appropriateness of the sentence.  Two requirements must be met before we will review this challenge on its merits.  First, an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence.  Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code.

***Id***.

Appellant provided as part of his brief a proper Pa.R.A.P. 2119(f) concise statement for reasons relied upon for allowance of appeal, and each issue addressed in his brief is sufficiently stated and explained.  We therefore individually examine each to determine if it presents a substantial question that warrants our review.  If an issue presents a substantial question, then our "scope of review in an appeal following a sentence imposed after probation revocation is limited to the validity of the revocation proceedings and the legality of the judgment of sentence." ***Commonwealth v. Ferguson***, 893 A.2d 735 (Pa.Super. 2006).  We further note that "[t]he imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal." ***Commonwealth v. Simmons***, 56 A.3d 1280, 1283-84 (Pa.Super. 2012).

At his first issue, Appellant argues that the trial court erred in failing to order a pre-sentence investigation ("PSI") report prior to his sentencing. That failure deprived the court of "information regarding [Appellant] and many factors that could aid the court in developing a sentence upon the individual needs of [Appellant]." Appellant's brief at 4. As the trial court neither ordered a PSI report nor explained its decision on the record, Appellant alleges that the trial court violated Pa.R.Crim.P. 702(A)(2)(a) ("The sentencing judge shall place on the record the reasons for dispensing with the pre-sentence investigation report if the judge fails to order a pre-sentence report" where "incarceration for one year or more is a possible disposition under the applicable sentencing statutes[.]"). Accordingly, Appellant argues that he is entitled to resentencing because a proper PSI report would have provided essential information that would have allowed the trial court "to view [Appellant's] case with the most recent information related to [Appellant] possible." *Id*. at 5.

Appellant relies on **Commonwealth v. Flowers**, 950 A.2d 330 (Pa.Super. 2008), in support of his argument. In **Flowers**, this Court held that a sentencing court abused its discretion in failing to either order a PSI report or explain on the record its reasons for doing so. We noted specifically that the court's offering of only a limited colloquy with the defendant at his sentencing hearing was inadequate, even in light of that court's familiarity with the defendant due to his frequent appearances before

it. Importantly, our holding advanced a policy to "guard against potential for recidivism" by requiring a trial court to become fully informed regarding defendant's history and background or to explain adequate reasons for its refusal to do so. *Id*. at 334.

The Commonwealth did not file a brief in this matter, and the trial court rested upon its denial of Appellant's post-sentence motion rather than author a separate 1925(a) opinion. In that denial, the trial court explained that it "did indeed apprise itself sufficiently of [Appellant's] history" and that it relied upon a PSI report prepared in anticipation of Appellant's March 7, 2014 sentencing hearing, as well as victim impact statements and the specific charges against Appellant. Trial court opinion, 11/18/14, at unnumbered page 6. In the months following that hearing, the trial court "actively explored the defendant's character and his potential response to rehabilitation programs." *Id*. at 7 (citation omitted).

We initially note that this challenge presents a substantial question. *See Commonwealth v. Kelly*, 33 A.3d 638, 640 (Pa.Super. 2011) ("[A]n appellant's allegation that the trial court imposed sentence without considering the requisite statutory factors or stating adequate reasons for dispensing with a pre-sentence report [raises] a substantial question."). We therefore address the merits of his argument.

Although Appellant is correct in his assertion that the statutory language requiring a PSI report is clear, he ignores the fact that this Court

- 6 -

has provided "some latitude in how this requirement is fulfilled." **Commonwealth v. Carrillo-Diaz**, 64 A.3d 722, 726 (Pa.Super. 2013) (citing **Flowers**, **supra** at 333). Indeed, case law does not require a PSI report in all instances. **Commonwealth v. Goggins**, 748 A.2d 721 (Pa.Super. 2000) (*en banc*). The essential inquiry is instead whether the sentencing court was "apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." **Id**.

While **Flowers** is instructive, the analysis contained therein is inapplicable to the instant matter. The sentencing court in **Flowers**, which was familiar with the defendant's conduct, had **no** PSI report and instead relied upon its own knowledge of the defendant and his history. To the contrary, the sentencing court herein ordered a PSI report in January 21, 2014, in advance of Appellant's March 7, 2014 sentencing on the charges that underlie this appeal. In addition to the court's "sufficient knowledge of [Appellant's] character, background, and his potential response to supervision programs," the court recognized that Appellant violated the conditions of his probation just seven months after his March 7, 2014 sentencing. Trial court opinion, 11/18/14, at unnumbered page 7.

The PSI report, in addition to the trial court's familiarity with Appellant's past criminal conduct and the extensive discussions of Appellant's rehabilitative options, goals, and needs on the record, rendered

the trial court sufficiently informed such that its sentence reflected the unique nature of his character and the various offenses. Since the PSI report was just seven months old and Appellant presented no argument or evidence of changed circumstances that warranted an updated report, we are satisfied that the sentencing court was sufficiently apprised of the unique facts of the case to render an individually tailored punishment. Therefore, we affirm the trial court at Appellant's first issue.

Appellant next challenges the trial court's finding that he is ineligible for the RRRI. In order to be eligible for RRRI, a defendant, *inter alia*, must not have committed one of several crimes or have a history of present or past violent behavior. Those crimes rendering a defendant RRRI ineligible include a history of violence, sexual offenses, personal injury crimes, and offenses involving deadly weapons. **See** 61 Pa.C.S. § 4503. Appellant, having not been convicted of any crimes enumerated in the RRRI statute and contending he has no history of violence, argues that the court's finding of ineligibility was erroneous. He specifically challenges the trial court's classification of "resisting arrest" as a violent crime, which excluded him from eligibility for RRRI.[2]

_____

[2] Though Appellant has not challenged whether his sole conviction for resisting arrest is sufficient to show a history of violence, we recognize this Court's recent decision in **Commonwealth v. Cullen-Doyle**, 2016 PA Super

*(Footnote Continued Next Page)*

- 8 -

In its opinion, the trial court explained that resisting arrest, under Pennsylvania law, necessarily includes conduct that presents serious potential risk of physical injury to another. Relying on ***United States v. Stinson***, 592 F.3d 460 (3d Cir. 2010), the court further recognized that resisting arrest involves challenging the authority of a police officer, who is charged with effectuating apprehension and is most likely armed, and is likely to result in injury or, at the very least, risk of injury. Trial court opinion, 11/18/14, at unnumbered page 8. As RRRI is available only to those who do "not demonstrate a history of present or past violent behavior and because the offense of resisting arrest indicates such violent behavior," the court maintains that its finding that Appellant is ineligible for RRRI is proper. ***Id***.

A challenge to a court's failure to impose an RRRI sentence implicates the legality of the sentence. ***Commonwealth v. Tobin***, 89 A.3d 663, 670 (Pa.Super. 2014). "It is legal error to fail to impose a RRRI minimum on an eligible offender." ***Id***. Thus, as "statutory interpretation implicates a question of law, our scope of review is plenary and our standard of review is de novo." ***Commonwealth v. Gerald***, 47 A.3d 858, 859 (Pa.Super. 2012) (citation omitted).

*(Footnote Continued)* ───────────

10 (Pa.Super. filed January 21, 2016), which held that one instance of misconduct may constitute a "history" for RRRI purposes.

Section 4503 of the RRRI Act defines "eligible offender" in relevant part as follows:

A defendant or inmate convicted of a criminal offense who will be committed to the custody of the department and who meets all of the following eligibility requirements:

(1) Does not demonstrate a history of present or past violent behavior.

* * *

(3) Has not been found guilty of or previously convicted of or adjudicated delinquent for or an attempt or conspiracy to commit a personal injury crime as defined under section 103 of the act of November 24, 1998 (P. L. 882, No. 111),[ ] known as the Crime Victims Act, except for an offense under 18 Pa.C.S. § 2701 (relating to simple assault) when the offense is a misdemeanor of the third degree, or an equivalent offense . . . .

61 Pa.C.S. § 4503(1), (3).

In *Commonwealth v. Chester*, 101 A.3d 56, 57 (Pa. 2014), the Pennsylvania Supreme Court resolved whether a conviction for first-degree burglary demonstrates "violent behavior" under Section 4503(1) as a matter of law. Though the *Chester* Court observed that "the RRRI Act does not define what constitutes a 'history of present or past violent behavior,'" it noted that Section 4503(2)-(6) enumerates crimes "that render an offender ineligible to receive a reduced minimum sentence[.]" *Id.* at 58, 63. Although burglary is not included as a *per se* disqualifying crime, the Court construed "Section 4503(1) as a broad, 'catchall' provision" that covered

- 10 -

"violent behaviors not otherwise identified in the RRRI Act's definition of 'eligible offender.'" *Id.*

The *Chester* Court held that a first-degree burglary conviction renders a defendant ineligible to receive an RRRI-reduced minimum sentence under Section 4503(1). *Id.* at 65. The Court reviewed the treatment of the offense at law as well as the structure and language of the burglary statute. **See** *id.* at 64–65. It observed that "burglary has been treated as a crime of violence dating back to the common law of England," which "punished burglars with death because of the great public policy involved in shielding the citizenry from being attacked in their homes and in preserving domestic tranquility." *Id.* at 64 (brackets removed). Tracing the treatment of burglary at law, the Court recognized that "all burglaries are crimes of violence for the purposes of the significant history of violent felony convictions aggravating circumstance for capital sentence." *Id.* (discussing 42 Pa.C.S. § 9711(d)(9)). Moreover, first-degree burglary is expressly listed as a crime of violence under Pennsylvania's recidivist sentencing statute, as well as a disqualifying offense for boot camp. *Id.* (discussing 42 Pa.C.S. § 9714(g) and 61 Pa.C.S. § 3903).

The *Chester* Court further reviewed the text of the burglary statute and discerned a distinction between first and second degree offenses, "as first-degree burglary contemplates the potential for confrontation, whereas second-degree burglary does not." *Id.* (distinguishing the finding in

- 11 -

*Commonwealth v. Gonzalez*, 10 A.3d 1260 (Pa.Super. 2010), that second-degree burglary does not render an individual *per se* ineligible for RRRI).  The Court emphasized a conviction for first-degree burglary imputed a risk of confrontation and violence because the structure invaded was either adapted for overnight use or an individual was present at the time of entry. *Id*. at 65.

The *Chester* Court, in holding that Section 4503(1) encompasses all "'violent behavior' in addition to the enumerated crimes contained in Section 4503(2)-(6)[,]" explicitly rejected the defendant's application of *expressio unius est exclusio alterius*, a principle of statutory interpretation holding that, when one or more things of a class are expressly stated, others of the same class are to be excluded*. Id*. at 63.  Furthermore, the Court dismissed the defendant's argument that his prior burglaries did not involve violent behavior, concluding: "it is an offender's non-privileged entry, which 'invit[es] dangerous resistance' and, thus, the possibility of the use of deadly force against either the offender or the victim, that renders burglary a violent crime, not the behavior that is actually exhibited during the burglary." *Id*. (citation omitted).

In light of the guidance from *Chester,* we consider whether a prior conviction for resisting arrest falls within the meaning of "violent behavior" as used in Section 4503(1), rendering an offender ineligible for RRRI.  Section 5104 of the Crimes Code provides:

> A person commits a misdemeanor of the second degree if, with the intent of preventing a public servant from effecting a lawful arrest or discharging any other duty, the person creates a substantial risk of bodily injury to the public servant or anyone else, or employs means justifying or requiring substantial force to overcome the resistance.

18 Pa.C.S. § 5104 (emphasis added). Notably, resisting arrest contains alternative bases for liability, *i.e.*, acts creating a substantial risk of injury or requiring substantial force to overcome. ***See Commonwealth v. Thompson***, 922 A.2d 926, 928 (Pa.Super. 2007). The use of the term "substantial" is consistent with the 1972 Official Comment that "this section changes existing law somewhat by not extending to minor scuffling which occasionally takes place during an arrest." 18 Pa.C.S. § 5104, 1972 Official Comment. Similarly, the Model Penal Code drafters indicated their suggested "language exempts from liability nonviolent refusal to submit to arrest and such minor acts of resistance as running from a policeman or trying to shake free of his grasp." Model Penal Code § 242.1, Explanatory Note for Sections 242.1–242.8.

Appellant contends that "the actual crime of resisting arrest . . . does not have to contain any violent act. The mere action of laying oneself on the ground could incur a citizen the charge of resisting arrest." Appellant's brief at unnumbered 11. However, that conduct is already excluded by the very definition of the statute. An individual who has been convicted of resisting arrest necessarily created a substantial risk of bodily injury or required an

officer to use substantial force. We cannot agree with Appellant that a conviction for resisting arrest is not "violent behavior" for the purposes of the RRRI statute as understood and analyzed by the *Chester* Court. *See Chester*, 101 A.3d at 64–65 (noting first-degree burglary is a crime of violence because of the potential for confrontation and possibility of deadly force). *See also Stinson*, 592 F.3d at 466 ("[T]he crime of resisting arrest in Pennsylvania does not encompass passive resistence[.]").

In *Commonwealth v. Clark*, 761 A.2d 190 (Pa.Super. 2000), we sustained a conviction for resisting arrest based on the following:

> The Carlisle Police responded to a fight in front of the Carlisle Tavern on South Hanover Street, just south of the Courthouse. The defendant was first observed in a crosswalk. He then approached Officer Kevin Roland at which time he was screaming profanity. When Officer Roland attempted to arrest the defendant for disorderly conduct, the defendant avoided arrest by walking backwards and walking in circles. From time to time, the defendant would assume a fighting stance. The officer then sprayed the defendant with pepper spray in an effort to subdue him. The defendant then began running down South Hanover Street in the travel lanes of the roadway. The officer ran after the defendant until Mr. Clark slipped on the wet roadway and fell down. The officer then turned the defendant over onto his stomach and handcuffed him.

*Clark*, 761 A.2d at 191. In light of that record, the *Clark* Court concluded that "substantial force was thus required to overcome [the defendant's] resistance to the arrest." *Id.* at 193–94.

In *Thompson, supra*, the defendant and her husband were involved in an argument with employees and another driver inside a parking garage.

*Thompson*, 922 A.2d at 927. Two officers on horseback arrived and the following occurred:

> Officer Deborah Ewing heard profanities as she approached the garage. Once inside, she observed [the defendant's unoccupied] vehicle by the booth. [The defendant] was standing behind the car, and [the defendant's husband] was shouting at the driver of the other vehicle. When Officer Ewing attempted to get [the defendant's husband's] attention by calling and whistling, he began flailing his arms and hitting the officer. While trying to control her horse, Officer Ewing informed [the defendant's husband] that he was under arrest.... [The defendant] approached Officer Ewing, yelling and waving her hands in an attempt to scare the horse. [The defendant] hit the horse's nose, causing the animal to rear up.
>
> Officer Canfield then arrived on the scene, dismounted his horse to [defuse] the activity among [the defendant], Officer Ewing, and Officer Ewing's horse. As the couple attempted to re-enter their vehicle, Officer Canfield yelled, pushed them against the car, threw them to the ground, and a struggle ensued. [The defendant] and her husband interlocked their arms and legs and refused to respond to Officer Canfield's verbal commands to release their hands. The officers attempted to pry the couple apart to handcuff and place them in custody. After struggling with the officers for a few minutes, [the defendant] was eventually disengaged from Mr. Thompson and handcuffed after pepper spray was deployed.

*Id.* The defendant was convicted of resisting arrest, disorderly conduct, and taunting a police animal. *Id.*

On appeal, the defendant in *Thompson* challenged her resisting arrest conviction and argued "her 'passive' resistance to the officers' attempts to place her in custody belie[d] any intent to strike or use force against them." *Id.* at 928. This Court rejected that argument, relying in part upon *Clark*. Specifically, we observed, "Officer Ewing ... struggled to pull [the defendant]

- 15 -

apart from her husband with whom she interlocked her arms and legs" despite the officers' commands to disengage from her husband. *Id.* We further noted "Officer Canfield testified that his attempts to restrain the couple to place them under arrest left him 'exhausted.'" *Id.* (citation omitted). Thus, the *Thompson* Court concluded the defendant's "use of passive resistance requiring substantial force to overcome provided sufficient evidence for upholding the resisting arrest conviction." *Id.*

*Chester* precludes this Court from engaging in a case-by-case analysis of the facts to determine whether a *per se* disqualifying crime imputes violent behavior. *See Chester*, *supra* at 65. Tellingly, however, our decisions in *Clark* and *Thompson* reveal that conduct constituting resisting arrest, even by passive resistance, requires such a substantial use of force that an officer or offender may be harmed, thereby causing significant risk of injury, and invites the same potential for confrontation that greatly concerned the High Court in considering the offense of first-degree burglary. Indeed, the *Chester* Court was concerned with "the **possibility** of the use of deadly force against either the offender or the victim" and "not the behavior that is actually exhibited" during the commission of the crime. *Id*. (emphasis added).

We further recognize that, relying on decisions by our courts, the federal courts have found that the essence of resisting arrest is the creation of a substantial risk of bodily injury and thus explicitly constitutes a "crime

of violence." *See Stinson*, 592 F.3d at 466 (citing *Commonwealth v. Miller*, 475 A.2d 145, 146 (Pa.Super. 1984) (noting that resisting arrest requires the creation of substantial risk, not that an offender show "aggressive use of force such as striking or kicking of the officer")).

The trial court asserts that, even if resisting arrest is not enumerated as disqualifying offense, it should be considered a violent crime that permits a trial court to find that a defendant has a history of violence such that he is ineligible for RRRI. The trial court relied upon *Stinson*, *supra*, to support its finding that resisting arrest is a violent crime. For the following reasons, we agree that *Stinson* is persuasive.

Under the federal sentencing guidelines, a defendant is considered a "career offender" if in relevant part he has "at least two prior felony convictions of ... a crime of violence [.]" U.S.S.G. § 4B1.1. The guidelines define a "crime of violence" as "any offense under federal or state law, punishable by a imprisonment exceeding one year, that ... otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2).

In *Stinson*, the Third Circuit held that resisting arrest was a categorical "crime of violence" for sentencing purposes because "it involves conduct that presents a serious potential risk of physical injury to another." *Stinson*, 592 F.3d at 466. The Court reasoned:

> Although the language of Pennsylvania's resisting arrest statute "does not require the aggressive use of force such as striking or kicking of the officer," we have found no decision under Pennsylvania law that affirmed a conviction for resisting arrest based on a defendant's inaction or simply "lying down" or "going limp." Counsel arguing before us on this appeal could cite to none in response to our questions. In fact, there are several cases in which Pennsylvania courts have recognized that resisting arrest does not extend to "minor scuffle[s] incident to an arrest." It is only when a defendant who was "struggling and pulling, trying to get away from [the arresting officer who was physically restraining him]," that he was convicted of resisting arrest, and such cases are rare.

*Id*. (citations omitted). The **Stinson** Court rejected the defendant's argument, which parallels the one presented here, that under **Thompson**, a Pennsylvania conviction could reflect "active" or "passive" resistance.

In doing so, the **Stinson** Court was called to rule on the implication of appellant's resisting arrest conviction on his federal sentencing guideline score and specifically whether it is a "crime of violence," a task similar to the one presented to this Court. Thus, we only look to **Stinson** and other federal cases for guidance as persuasive authority with respect to the Commonwealth's RRRI statute.

Appellant did not present, and the trial court did not address, any secondary argument that Appellant is ineligible for RRRI. N.T. Sentencing, 10/7/14, at 44. We therefore conclude that Appellant's prior conviction for resisting arrest demonstrates "a history of present or past violent behavior" for the purposes of determining RRRI eligibility. Accordingly, we agree with the trial court's finding in this respect and affirm.

We move to Appellant's third argument that his sentence was "contrary to the fundamental norms underlying the sentencing process" because all of his crimes were non-violent offenses "motivated by [his] addiction to illegal drugs." Appellant's brief at unnumbered 13. Specifically, he argues that the sentencing court did "not take into account the goals of individualized sentencing that takes into account the individual's needs." **Id**.

By alleging that the sentencing court did not adequately consider all of the requisite factors in fashioning Appellant's sentence, he presents a substantial question. **See**, **e.g.**, **Commonwealth v. Bricker**, 41 A.3d 872, 876 (2012) (recognizing that an appellate court is to determine "whether the [sentencing] court imposed an individualized sentence) (citation omitted). He complains that the sentencing court was improperly motivated by its personal frustration with Appellant, his many unsuccessful attempts at rehabilitation, and the frequency with which he interacts with the court.

As discussed *supra*, the sentencing court had the benefit of a recent PSI report. "[W]here the sentencing judge had the benefit of a presentence investigation report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." **Commonwealth v. Clarke**, 70 A.3d 1281, 1287 (2013), *appeal denied*, 85 A.3d 481 (Pa. 2014).

Further, in issuing Appellant's sentence, the court specifically addressed his rehabilitative needs and history, as well as previous violations

and punishments. In its frustration with Appellant's repeated misconduct and inability to reform, the sentencing court demonstrated that it had intimate familiarity with Appellant and his needs and that the sentence was imposed both to vindicate the authority of the court and because Appellant had "repeatedly and significantly violated conditions of supervision, and most recently was an absconder from supervision. The conduct of [Appellant] indicates that [he] will commit another crime if not imprisoned." N.T. Sentencing, 10/7/14, at 44.

In light of the sentencing court's access to a current PSI report and the explanation provided to Appellant for his sentence at his hearing, we cannot find that the court abused its discretion in imposing its sentence of twelve and one-half to twenty-five years incarceration.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judge Olson joins the majority.

Judge Strassburger files a Concurring Opinion.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/18/2016