J-A27018-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RAHSEUL  MAVEN :
:
Appellant : No. 2931 EDA 2016

Appeal from the Judgment of Sentence April 22, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0009780-2013

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.: **FILED JUNE 25, 2019**

Rahseul Maven appeals from the April 22, 2016 judgment of sentence of three to six years of imprisonment imposed following his conviction for possession with intent to deliver ("PWID") crack cocaine.  Upon review, we affirm.

On July 13, 2013, Philadelphia Police arrested Appellant for, *inter alia*, PWID following two controlled purchases of crack cocaine to a confidential informant ("CI") and a search of the second-floor apartment at 2601 South Sheridan Street.  On February 19, 2014, Appellant filed a motion for disclosure of the CI's identity under Pa.R.Crim.P. 573.  Following a hearing, the trial court denied the motion.  Appellant also filed a Rule 600 motion, which was granted on May 26, 2015.  This ruling was vacated following a hearing on the Commonwealth's motion for reconsideration.  On September 9, 2015,

Appellant entered an open guilty plea to PWID, relinquishing, *inter alia*, his rights under Pa.R.Crim.P. 600.

On November 25, 2015, Appellant filed a motion to withdraw his guilty plea, which the trial court granted on the same day. Also on November 25 and November 26, 2015, Appellant was recorded on a jail telephone arranging for the destruction or removal of cocaine at his house in anticipation of his release on house arrest pending trial. N.T. Trial, 4/14/16, at 140-45. On April 13, 2016, prior to the start of his jury trial, Appellant's trial counsel orally raised a motion *in limine* to preclude the Commonwealth from introducing and admitting into evidence the telephone recordings. Following a hearing, the trial court denied the motion and Appellant proceeded to his jury trial. Appellant was convicted of PWID.

On April 22, 2016, prior to the start of sentencing, Appellant's trial counsel orally moved for extraordinary relief under Pa.R.Crim.P. 704(B), asserting that Appellant was entitled to a new trial because the Commonwealth's playing of the November phone calls unfairly prejudiced Appellant. N.T. Sentencing, 4/22/15, at 5-8. The trial court denied the oral motion for extraordinary relief and proceeded to sentencing. *Id*. at 10. Appellant received three to six years of imprisonment, followed by ten years of probation for PWID. The court also found Appellant ineligible for a recidivism risk reduction incentive ("RRRI") sentence.

Appellant timely filed post-sentence motions, which the trial court denied. Appellant filed a notice of appeal and both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents six issues for our review:

1.  Did not the trial court err when it denied [A]ppellant's motion to preclude Pa.R.Evid. 404(b) evidence, where the admitted evidence consisted of conversations from two years after the instant case and did not meet the knowledge, intent, lack of mistake or identity exceptions to Rule 404(b); and the evidence was more prejudicial than probative?

2.  Did not the lower court err in denying [A]ppellant's Motion to Reveal Identity of Confidential Informant because 1) [A]ppellant satisfied his burden that his request was material and reasonable by raising a defense of mistaken identification; and 2) the Commonwealth failed to show any "reasonably specific type of danger" to the specific informant in this matter if the identity were disclosed?

3.  Did not the trial court err by failing to grant [A]ppellant's requested jury instruction of failure to call a potential witness, the Commonwealth's confidential informant, in violation of his rights to due process and a fair trial under the state and federal constitutions?

4.  Did not the trial court err by failing to impose a recidivism risk reduction incentive (RRRI) sentence where [A]ppellant's single prior adjudication for possession of a weapon under 18 Pa.C.S. § 907(b) and his alleged association with a gang, do not constitute a "history of present or past violent behavior," thereby rendering [A]ppellant's sentence illegal?

5.  Did not the trial court err as a matter of law and violate the discretionary aspects of sentencing when it imposed a manifestly excessive and unreasonable sentence of three to six years of confinement plus ten years of probation, a sentence in the aggravated range of the sentencing guidelines, where the sentence as based on impermissible factors and was in excess of what was necessary to address

the gravity of the offense, the protection of the community and [A]ppellant's rehabilitative needs?

6.   Pursuant to [**Commonwealth v. Mills**], 162 A.3d 323 (Pa. 2017), did not the motions court erroneously deny [A]ppellant's motion to dismiss pursuant to Pa.R.Crim.P. 600(A), after initially granting it, because, including the time attributable to the normal progression of a criminal case where there was no "judicial delay," more than 365 days had elapsed before [A]ppellant was brought to trial?

Appellant's brief at 5-6.

We begin our analysis with Appellant's first argument concerning the admissibility of the 2015 prison recordings under Pa.R.E. 404(b). It is well-settled that a trial court's grant or denial of a motion *in limine* is subject to an abuse of discretion standard of review. **Commonwealth v. Sherwood**, 982 A.2d 483, 495 (Pa. 2009). Specifically, Appellant argues that the trial court abused its discretion in permitting the Commonwealth to introduce evidence of subsequent bad acts because Appellant did not dispute any elements of PWID and his sole defense theory at trial was that he was not the individual who committed PWID. Appellant's Brief at 24.

In order to achieve a conviction for possession with intent to deliver ("PWID"), "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." **Commonwealth v. Lee**, 956 A.2d 1024, 1028 (Pa.Super. 2008). When controlled substances are not discovered on a defendant's person, the Commonwealth may meet its burden by showing constructive possession. **Commonwealth v. Roberts**, 133 A.3d 759, 767 (Pa.Super. 2016). We have

defined constructive possession as "conscious dominion" or "the power to control the contraband and the intent to exercise that control." *Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012). Constructive possession may be established by the totality of the circumstances. *Id*.

A review of the trial transcript reveals that Appellant countered the Commonwealth's evidence of his guilt by repeatedly alleging that he was not the person possessing or selling the cocaine, suggesting that it was a neighbor, Joseph Jordan, or someone that looked like him, that the CI lied, and that Philadelphia Police Officer Jason Yerges was mistaken in his identification. N.T. Trial, 4/13/16, at 148; N.T. Trial, 4/14/16, at 89-101, 139; N.T. Trial, 4/15/16, at 7-33. Additionally, Appellant focused on Joseph Jordan's guilt by introducing evidence that allowed him to argue that the drug packaging discovered in the apartment matched the cocaine found on Joseph Jordan when he was arrested, pointing out that the letter was addressed to Appellant at a different address, and that the two separate apartments theory was a convenient fiction created by the Commonwealth. N.T. Trial, 4/14/16, at 141-43, 152-55; N.T. Trial, 4/16/16, at 14, 18.

Since Appellant's misidentification defense necessarily contested the elements of PWID, it went directly to the heart of the Commonwealth's case against him. *See*, *e.g.*, *Commonwealth v. Brooks*, 7 A.3d 852, 857 (Pa.Super. 2010) ("In addition to proving the statutory elements of the crimes

charged beyond a reasonable doubt, the Commonwealth must also establish the identity of the defendant as the perpetrator of the crimes."). Therefore, the trial court did not err in declining to exclude the Commonwealth's subsequent bad acts evidence on the basis that the evidence was unnecessary. As Appellant did challenge the elements of PWID, we now proceed to consider whether the telephone calls were admissible as an exception to Pa.R.E. 404(b).

Pennsylvania Rule of Evidence 404(b)(2) provides that evidence of other crimes, wrongs, or bad acts is inadmissible to show that a person acted in conformity therewith. However, such evidence is admissible if offered for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id*. at 358. Additionally, the probative value of such evidence must outweigh its potential for unfair prejudice. *Id*. Importantly, evidence will not be prohibited merely because it is harmful to the defendant. ***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007). Thus, the trial court must conduct a balancing test. ***Commonwealth v. Hairston,*** 84 A.3d 657, 664 (Pa. 2014).

Appellant argues that the telephone conversations should have been excluded as improper knowledge, intent, and lack of mistake evidence. Appellant's brief at 24-25. After careful review, we disagree and find that the calls were admissible to establish Appellant's knowledge and control over the crack cocaine that was recovered from his apartment. Since this evidence

directly rebutted Appellant's misidentification defense, its admission was not an abuse of the trial court's considerable discretion. ***Commonwealth v. Mendez***, 74 A.3d 256, 260 (Pa.Super. 2013) (finding that a trial court's evidentiary rulings are subject to an abuse of discretion standard on appellate review). To the extent that the trial court admitted the evidence for another reason, we can affirm on any basis supported by the record. ***Commonwealth v. Williams***, 125 A.3d 425, 433 n.8 (Pa.Super. 2015) ("To the extent our legal reasoning differs from the trial court, we note that as an appellate court, we may affirm on any legal basis supported by the certified record.").[1]

Appellant relies on ***Commonwealth v. Ross***, 57 A.3d 85, 98-99 (Pa.Super. 2012), to conclude that the subsequent bad acts evidence should have been excluded. Appellant's brief at 27, 29. In ***Ross***, the Commonwealth's purported Rule 404(b) exception evidence did not go directly to an element that needed to be proven because intent could be inferred from the circumstances surrounding the murder. However, our case is distinguishable from ***Ross***, since proof of Appellant's constructive possession of crack cocaine could not be inferred from the circumstances in the same way

---

[1] The Commonwealth argues that this claim is waived because the motion *in limine* "is silent on the content of the recorded calls," only containing a brief paraphrasing of the content of the calls during the oral motion, and Appellant has failed to make the calls a part of the certified record. Commonwealth's brief at 10. As the trial court did not find the record to be inadequate, we rely on the record provided and also decline to find waiver.

that the specific intent to kill can be inferred by the condition of a body in a homicide case.

In the telephone conversations, Appellant exerts control over crack cocaine located under his bed by instructing the person he is speaking with to remove the crack cocaine from that specific location. During the earlier search of his residence, the same type of drug was found in his bedroom closet. N.T. Trial, 4/14/16, at 52-53. Appellant attempted to disavow any knowledge or control over the drugs found in his bedroom by pointing out that the two apartments were connected by an interior hallway and that Joseph Jordan had crack cocaine on him when he was arrested. Therefore, the trial court did not abuse its discretion when it held that Appellant's statements exerting control over identical drugs in the same location established sufficient similarities to create the necessary nexus rendering the conversations admissible.

Finally, Appellant alleges that the probative value of the evidence was substantially diminished by the two years that passed between the charges and the subsequent phone calls, and the Commonwealth's low need for the evidence, such that the prejudice he suffered outweighed the probative value. Appellant's brief 29-31. While we agree that the passage of time did diminish the value of the evidence slightly, that fact goes to the weight of the evidence, not its admissibility. Appellant was not convicted of any crime based on these calls and he was free to argue his position on the time gap to the jury. In

fact, trial counsel did so, repeatedly. N.T. Trial, 4/13/16, at 151; N.T. Trial, 4/15/16, at 30.

Notably, Appellant spent the majority of the two years incarcerated.[2] It is well-established that time spent incarcerated must be excluded in the calculation of how much time has elapsed in a course of conduct analysis. **Commonwealth v. O'Brien**, 836 A.2d 966 (Pa.Super. 2003) (holding defendant's prior ten-year old convictions were not too remote in time where the defendant was paroled five years before current offense); **Commonwealth v. Rush**, 646 A.2d 557 (Pa. 1994) (excluding defendant's period of incarceration from relevant time for remoteness analysis, where eight years separated commission of crimes in question). Therefore, the relevant time lapse between the offense and subsequent calls is not too remote because Appellant was incarcerated for much of the time. Additionally, the similarities of the two incidents render the two-year time gap less important.

Finally, proof of possession played a vital role in the Commonwealth's burden of proof for PWID. Therefore, the Commonwealth had a significant need for the subsequent bad acts evidence. **Commonwealth v. Gordon**, 673 A.2d 866 (Pa. 1996) (holding evidence of appellant's similar prior sexual

---

[2] Appellant was in custody from July 12, 2013 until March 13, 2015. N.T. Sentencing, 4/22/16, at 26. He returned to custody on November 25, 2015, when he withdrew his guilty plea. **Id**.

assaults was not unduly prejudicial where Commonwealth was required to prove non-consensual touching occurred; evidence was necessary for prosecution of case, where uncorroborated testimony of victim might lead jury to determine there was reasonable doubt as to whether appellant committed the crime). Thus, the trial court did not err when it found that the evidence demonstrating Appellant's control over drugs in his bedroom was highly probative and admissible evidence of his possession and control over drugs in his residence two years prior. Trial Court Opinion, 8/29/17, at 14.

Second, Appellant asserts that the trial court erred in failing to require the Commonwealth to disclose the identity of the CI. Appellant's brief at 33-34. The Commonwealth responds that disclosing the CI's identity was not warranted because Appellant failed to demonstrate that the CI's testimony was material to the defense and because revealing the identity of the CI would threaten the CI's safety. Commonwealth's brief at 28.

"Our standard of review of claims that a trial court erred in its disposition of a request for disclosure of an informant's identity is confined to abuse of discretion." *Commonwealth v. Washington*, 63 A.3d 797, 801 (Pa.Super. 2013). The Commonwealth has a qualified privilege to withhold the identity of a CI. *Commonwealth v. Marsh*, 997 A.2d 318 (Pa. 2010). In order to overcome that privilege, a defendant must establish that the information sought is material to the preparation of his defense and that the request is reasonable. Pa.R.Crim.P. 772(b)(2)(a)(i). Once this prerequisite is met, the

trial court exercises its discretion to determine whether the information should be revealed by balancing relevant factors, which are weighted in favor of the Commonwealth. *Commonwealth v. Watson*, 69 A.3d 605, 607-08 (Pa.Super. 2013); *Marsh*, *supra*, at 322 (holding that because Marsh failed to make the threshold showing, "his motion should have been rejected without any consideration of the other factors necessary to make a balanced evaluation").

Appellant failed to show that the CI's identity was material to his defense. In this case, the CI was not the only eyewitness to the crime. At the motions hearing, Officer Yerges testified that he observed both transactions within twenty-five feet and positively identified Appellant as the dealer. N.T. Motions, 4/1/14, at 6-9, 11. During both surveillance operations, the CI was searched before and after the transaction, made phone calls to Appellant in the officers' presence, and was never out of the sight of Officer Yerges. *Id*. at 6, 8-9. Additionally, the CI was not present or involved in the search of 2601 South Sheridan Street.

As the testifying officer directly observed the controlled buys and identified Appellant based on his own observances, Appellant needed to offer an explanation as to how the CI's testimony could have benefitted him. However, he has provided none. Therefore, the trial court did not commit

legal error when it concluded that the Commonwealth was not required to reveal the identity of the CI.[3]  ***Watson***, ***supra*** at 608.

Appellant's next concern attacks the trial court's denial of his request for a missing witness jury instruction.  Appellant contends that the trial court erred in refusing to charge the jury that it could draw an inference, based on the absence of the CI's testimony at trial, that the CI's testimony would have been adverse to the Commonwealth.  Appellant's brief at 41-44.  The Commonwealth responds that Appellant was not entitled to an instruction because the informant's identity was privileged and disclosure of his identity, by putting him on the stand, would have put the informant's life at risk. Appellee's brief at 35.

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." ***Commonwealth v. Galvin***, 985 A.2d 783, 798–99 (Pa. 2009).  A trial court may provide for a missing witness instruction against the Commonwealth when, "a potential witness is available to only one of the parties to a trial, and

---

[3] Because Appellant failed to establish materiality, we need not assess whether the trial court abused its discretion in balancing the relevant factors to determine whether the CI's identity should be revealed.  However, if we were to review it, we would find that the trial court did not abuse its discretion when it concluded that the Commonwealth "identified convincing and credible concerns regarding the safety of the confidential informant," that outweighed Appellant's need for the testimony.  Trial Court Opinion, 8/29/17, 10.

it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative." ***Commonwealth v. Evans***, 664 A.2d 570, 574 (Pa.Super. 1995). However, "[a]n inference may not be drawn where there exists a satisfactory explanation as to why the party failed to call such witness." ***Commonwealth v. Jones***, 637 A.2d 1001, 1005 (Pa.Super. 1994). A satisfactory explanation exists where the Commonwealth has a genuine concern for a witness's safety. ***Id***.

The record reflects that Appellant requested that the trial court give a missing witness jury instruction at trial and contemporaneously objected to its absence. N.T. Trial, 4/14/16, at 159; N.T. Trial, 4/15/16, at 70. The trial court rejected that request, finding that the Commonwealth had provided a satisfactory explanation, namely a genuine concern for the personal safety of the CI, for its failure to call the CI to testify at trial. N.T. Trial, 4/14/16, at 160-61; N.T. Trial, 4/15/16, at 70. Accordingly, the trial court concluded that Appellant was not entitled to a missing witness jury instruction, and refused to provide the requested charge. We agree, and conclude that the trial court did not err in refusing to issue a missing witness instruction.

In his fourth claim, Appellant attacks the trial court's determination that he was not an "eligible offender" for the RRRI program, based on his prior adjudication for possession of a weapon and association with a gang. Appellant's brief at 45. A challenge to a court's failure to impose an RRRI sentence implicates the legality of the sentence. ***Commonwealth v. Tobin***,

89 A.3d 663, 670 (Pa.Super. 2014). "It is legal error to fail to impose a RRRI minimum on an eligible offender." *Id*. As "statutory interpretation implicates a question of law, our scope of review is plenary and our standard of review is de novo." *Commonwealth v. Gerald*, 47 A.3d 858, 859 (Pa.Super. 2012) (citation omitted).

The RRRI Act requires the trial court to determine at the time of sentencing whether the defendant is an "eligible offender." 61 Pa.C.S. § 4505(a). In order to be eligible for RRRI, a defendant must meet the eligibility requirements codified at 61 Pa.C.S. § 4503. Instantly, Appellant is not disqualified from RRRI eligibility based on any of the offenses enumerated in § 4503. *See* 61 Pa.C.S. § 4503(2)-(6). Rather, Appellant challenges the trial court's RRRI ineligibility determination based on § 4503(1), which disqualifies a defendant who has "a history of present or past violent behavior." 61 Pa.C.S. § 4503(1). The RRRI Act does not define "a history of present or past violent behavior," but our prior decisions provide helpful guidance. *See Commonwealth v. Chester*, 101 A.3d 56 (Pa. 2014); *Commonwealth v. Finnecy*, 135 A.3d 1028 (Pa.Super. 2016).

In *Chester*, our Supreme Court addressed whether a conviction for first-degree burglary demonstrated "violent behavior" under 61 Pa.C.S. § 4503(1) and found that it rendered the defendant ineligible for RRRI treatment. In reaching this conclusion, our Court construed § 4503(1) as a broad "catchall" provision that covered "violent behaviors not otherwise

- 14 -

identified in the RRRI Act's definition of eligible offender." ***Chester***, ***supra*** at 63. In ***Finnecy***, we followed the ***Chester*** Court's guidance and similarly found that a conviction for resisting arrest rendered a defendant ineligible to receive a RRRI sentence. ***Finnecy***, ***supra*** at 1037. Ultimately, we found compelling the fact that a conviction for resisting arrest, even by passive resistance, requires:

> such a substantial use of force that an officer or offender may be harmed, thereby causing significant risk of injury, and invites the same potential for confrontation that greatly concerned the High Court in considering the offense of first-degree burglary. Indeed, the ***Chester*** Court was concerned with the possibility of the use of deadly force against either the offender or the victim and not the behavior that is actually exhibited during the commission of the crime.

***Id***. at 1036 (internal quotation and citation omitted).

Appellant was adjudicated delinquent for possessing a .25 caliber semi-automatic handgun, an offense not enumerated in the RRRI Act. Combined with the potential for violence that Appellant's long-term association with a street gang and continued sale of cocaine in a residential neighborhood posed, the trial court properly found Appellant ineligible based on his prior adjudication for possession of a .25 caliber semi-automatic handgun.

Appellant counters that his isolated adjudication for possession of a weapon is insufficient to demonstrate a "history of present or past violent behavior, based on ***Commonwealth v. Cullen-Doyle***, 164 A.3d 1239 (Pa. 2017). However, Appellant reads the holding in ***Cullen-Doyle*** too broadly. In ***Cullen-Doyle***, the defendant pled guilty to one count of burglary graded

- 15 -

as a first degree felony and several counts of conspiracy to commit felony-one burglary. The defendant was determined to be RRRI ineligible based on those convictions alone. Our Supreme Court reversed the defendant's eligibility, holding that a "single, present conviction for a violent crime does not constitute a history of violent behavior." *Id*. at 1244. Notably, the Court cautioned against reading § 4503 too broadly when dealing with a first-time offender, since the legislature intended to include as many first-time offender's as possible in an attempt to reduce recidivism. *Id*. at 1242-43.

Appellant's case is readily distinguishable from **Cullen-Doyle**, since Appellant is not a first-time offender and failed at previous attempts at rehabilitation. Specifically, Appellant has a prior adjudication for possessing a gun, a prior conviction for selling crack cocaine, and is a known associate of a violent street gang. Additionally, Appellant has already been given the opportunity to rehabilitate through a juvenile placement and probation. Instead of utilizing those opportunities to rehabilitate himself, Appellant has continued to participate in illegal drug activity, even while incarcerated on this case. N.T. 4/22/16, 23-30. Accordingly, the trial court did not abuse its discretion in finding Appellant ineligible for RRRI.

In his penultimate claim, Appellant challenges the discretionary aspects of his aggravated range sentence based on the trial court's alleged improper reliance on his gang association. The following principles govern whether a merits review is warranted:

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
> > (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

***Commonwealth v. Samuel***, 102 A.3d 1001, 1006-07 (Pa.Super. 2014) (citations omitted).

Appellant filed a motion for reconsideration of his sentence. However, in it, he did not challenge his sentence based on the trial court's impermissible consideration of his gang association. Instead, he targeted an incorrect offense gravity score, the court's failure to state adequate reasons for imposing his sentence, and the court's failure to adequately examine his background, character and rehabilitative needs. Thus, his current claim is waived. ***See*** Pa.R.A.P. 302. Similarly, while Appellant's concise statement challenged the discretionary aspects of his sentence, he asserted different grounds than he alleges herein. Therefore, as Appellant has raised this issue for the first time on appeal, it is waived. ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010) (objections to the discretionary aspects of a sentence are waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed).

- 17 -

Even if we were to determine that Appellant's claim was not waived, we would find no merit to its underlying allegation.[4] At sentencing and in a pre-sentencing memorandum, the Commonwealth presented uncontested evidence that "[Appellant] is a self-identified member of '7th Street' gang." Commonwealth's pre-sentencing memorandum, 4/21/16, at 5. The record reveals that the trial court considered this factor along with all of the other details of Appellant's background, as highly relevant to Appellant's potential for rehabilitation. Trial Court Opinion, 8/29/17, at 19.

Further, the trial court also had the benefit of sentencing guidelines and a presentence report, which the court is presumed to have considered and weighed in crafting its sentence. *See Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa.Super. 2013) (finding that where the sentencing court has reviewed a pre-sentence report, it is presumed that the court was aware of relevant information regarding the defendant's character and weighed those considerations along with any mitigating factors). Most notably, the trial court found Appellant's "illegal drug dealing in the presence of his children to be the most alarming factor when fashioning the [o]rder of [s]entence," not his gang

_____

[4] Appellant's brief contains a statement of reasons relied upon for his challenge to the discretionary aspects of his sentence as required by Pa.R.A.P. 2119(f). If his claim were properly preserved, we would have found that it raised a substantial question. *Commonwealth v. Dodge*, 77 A.3d 1263, 1273 (Pa.Super. 2013) (holding reliance on impermissible sentencing factors can raise a substantial question).

- 18 -

affiliation. *Id*. at 20. Accordingly, we find nothing in the record to indicate that the court abused its discretion in imposing Appellant's sentence.

Finally, Appellant argues that the motions court erroneously denied his motion to dismiss pursuant to Pa.R.Crim.P. 600, because more than 365 days elapsed from arrest to trial and there was no attributable "judicial delay." Appellant's brief at 57. Appellant concludes that this Court should vacate his judgment of sentence and dismiss his conviction. The Commonwealth responds that no relief is due, since Appellant was tried and convicted before the mechanical run date. Commonwealth's brief at 46. We agree.

We review Rule 600 motions under the following standard of review:

> In evaluating speedy trial issues, our standard of review is whether the trial court abused its discretion, and our scope of review is limited to the trial court's findings and the evidence on the record, viewed in the light most favorable to the prevailing party. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonably, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Miskovitch***, 64 A.3d 672, 677 (Pa.Super. 2013) (internal citations and quotation marks omitted). Rule 600 provides, in relevant part that:

> (2)   Trial shall commence within the following time periods.
>
>   (d)   When a trial court has granted a new trial and no appeal has been perfected, the new trial shall

- 19 -

> commence within 365 days from the date on which the trial court's order is filed.

Pa.R.Crim.P. 600(a)(2)(d). Importantly, an order permitting an appellant to withdraw his guilty plea "effectively grant[s] a new trial and commence[s] an entirely new speedy trial date pursuant to Rule [600(a)(2)(d)]." **Commonwealth v. Betz**, 664 A.2d 600, 613-14 (Pa.Super. 1995); **see also** Pa.R.Crim.P. 600, comment.

Here, the trial court permitted Appellant to withdraw his guilty plea on November 25, 2015. Appellant was then tried and convicted in April of 2016, well within the 365 days that the Commonwealth had to bring Appellant to trial. Therefore, this claim is meritless on its face.

Appellant relies on **Commonwealth v. Mills**, 162 A.3d 323 (Pa. 2017), to challenge a ninety-nine day delay that occurred before he entered into his guilty plea. The trial court considered this claim and deemed that the relevant time period was excusable because it was time that the Commonwealth spent attempting to respond to Appellant's "unusual and comprehensive discovery [request for] documents not normally obtained within the pre-trial process." Trial Court Opinion, 8/29/17, at 12. We agree.

In **Mills**, the Court held that there was no bright-line that would automatically exclude time spent preparing for trial between the scheduling conference and the first trial listing. **Mills**, **supra**, at 324-25. Instead, the **Mills** Court determined that trial courts have discretion "to differentiate between time necessary to ordinary trial preparation and judicial delay arising

- 20 -

out of the court's own scheduling concerns." ***Id***. at 325. As an "unusual" discovery request would not implicate "ordinary trial preparation," the ***Mills*** Court's ultimate holding is irrelevant. Accordingly, Appellant's reliance on ***Mills*** for that proposition is misplaced, and the trial court properly dismissed Appellant's Rule 600 challenge.

Judgment affirmed.

Judge McLaughlin joins the memorandum.

Judge Stabile files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/19