J-S35043-19

## NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37

COMMONWEALTH OF PENNSYLVANIA,  :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
        Appellee          :
:
        v.             :
:
JANICE LIND,            :
:
        Appellant     :   No. 1825 EDA 2018

Appeal from the Judgment of Sentence Entered May 18, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006459-2017


COMMONWEALTH OF PENNSYLVANIA,  :   IN THE SUPERIOR COURT OF
:          PENNSYLVANIA
        Appellee          :
:
        v.             :
:
JANICE LIND,            :
:
        Appellant     :   No. 1826 EDA 2018

Appeal from the Judgment of Sentence Entered May 18, 2018
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006458-2017

BEFORE:   OLSON, J., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:       **FILED AUGUST 1, 2019**

Janice Lind (Appellant) appeals from the judgment of sentence imposed following her convictions for unlawful contact with a minor and two counts each of conspiracy to commit rape, endangering the welfare of a child, corruption of minors, conspiracy to commit involuntary deviate sexual

---

*Retired Senior Judge assigned to the Superior Court.

intercourse (IDSI) with a child, and conspiracy to commit incest. Upon review, we affirm.

Appellant had been charged with the systematic sexual abuse of two of her minor biological children, her [son, AL.F,] and [the] eldest of [Appellant's] three daughters, [A.F. (collectively, Children),] committed in concert and independently with her husband[, C]hildren's biological father[, R.F.]. Charges had not [been] brought against Appellant for the sexual abuse of her two younger daughters who had also been reported as similarly abused per [Children. R.F.,] who had also participated in the sexual abuse, however, had died before the authorities learned of the [abuse]. The abuse of these [C]hildren had occurred between 2011 and 2013, inside the home where Appellant and [R.F.] had resided together with their minor children, who had ranged [in age from] under eight years to approximately eighteen months[. Children and their sisters] had been removed from this residence by the City of Philadelphia Department of Human Services [DHS] due to inhabitable [sic] conditions in the home and reported narcotics abuse of both parents before any information was related concerning sexual and physical abuse.

[A.F.,] who was 12 years old when she testified at trial, had reported being repeatedly sexually abused by both [Appellant and R.F.], particularly when she was six or seven years old. She stated in summary that she and [AL.F] were often abused in Appellant's bedroom. Appellant had played pornographic movies on the television. Appellant directed [Children] to mimic the sexual acts portrayed on the television. [Appellant] had directed them to touch each other's private parts. [A.F.] recalled that Appellant had touched her front private parts and put "burning powder" on her front private parts. She testified that [R.F.] had touched her private parts in concert with Appellant. Appellant had put [R.F.'s] private part into [A.F.'s] private part. [A.F.] testified that Appellant had been laughing while the sexual activity was occurring.

[AL.F.] was 10 years old when he testified. He recalled frequent instances when Appellant had ordered all four children to enter her bedroom when [R.F.] was in the bedroom only to be subjected to myriad forms of abuse. He reported that Appellant had touched his front and rear private parts. [R.F.] inserted his

front private part into [AL.F's] back private part. He said that Appellant had watched this activity. [AL.F.] said that Appellant had touched and performed sexual acts on all three of his sisters including a time when the youngest was just a baby. As to the second oldest sister, he said that Appellant had touched her back part while the father touched her front part. He recalled that his father had put his private part into [A.F.'s] private part.

[AL.F.] testified that Appellant had given pills to [C]hildren to ingest while the sexual activity was occurring. He also remembered that [R.F.] had put a substance on his back private part and that Appellant had also put a substance on the youngest child's front private part. He had frequently observed Appellant give herself an injection with needles. [AL.F.] said that Appellant would "whoop" the children with wires, hangers and belts if they did not comply with all demands of Appellant and [R.F].

C.A. testified that she was the biological sister of [R.F.] and [C]hildren's aunt. After [R.F.] died in January 2016, she discovered that all four children had been removed from Appellant's home and placed in various foster care homes. She contacted [DHS] and arranged to have [C]hildren [and their sisters] placed to live with her and her children.

After [C]hildren [and their siblings] began living with C.A. and her children, C.A. discovered that Appellant's youngest child had displayed sexual behavior to C.A.'s minor children. C.A. immediately questioned [AL.F. and A.F. separately. AL.F.] told her that Appellant and [R.F.] had hurt him in his private part and that Appellant had played pornographic movies on the television. He told her that [R.F.] had put his private part in his back area. [AL.F] also said that [R.F.] put a "powder on his private part which burned." [AL.F.] reported to her that Appellant had made his three sisters perform sexual acts. He said that Appellant told him and [A.F.] to perform sexual acts on each other. [AL.F.] said that Appellant told him to watch the television and perform the acts which he saw. He said Appellant laughed at the children during these horrific acts.

[A.F.] independently corroborated [AL.F.'s] report of sexual abuse that had been mimicked. [A.F.] told C.A. that Appellant had played a movie on the television, and told her and [AL.F.] to do what was portrayed on the television. She

- 3 -

described sexual activity that had been demanded. [A.F.] said that the sexual activities hurt so much that she had bled. Upon hearing the individual accounts of [AL.F. and A.F.], C.A. immediately called [DHS. DHS] separated Appellant's children and all but one child had been permanently removed from C.A.'s home and placed in homes wherein other children did not reside.

Christopher Li, social worker for [DHS], testified that as the initial intake responder, he had conducted minimal fact interviews with [AL.F. and A.F.]. The interviews were "minimal" so as not to re-traumatize [C]hildren. [AL.F.] reported to him [] that he remembered being brought into his parents' bedroom, forced to watch pornographic movies, forced to perform oral sex on [R.F.] and forced to engage in sexual activities with his parents and sisters who at that time ranged in ages from six or seven to less than two years old. [A.F.] also said that she had to do "stuff" with her parents and siblings. Mr. Li then referred the case to the Philadelphia Children's Alliance, an agency tasked with interviewing children who suffered sexual abuse.

Michelle Kline, a forensic interview specialist with the Philadelphia Children's Alliance[,] testified that she interviewed the four children separately. Videotapes of the interviews were shown to the jury. The videotape recordings depicted [AL.F.'s and A.F.'s] credible separate reporting of long term penetrating sexual abuse committed by [Appellant and R.F.] in response to non-confrontational and non-suggestive questions posed by the Child Alliance forensic interview specialist.

It was stipulated at trial that when the third oldest child[, O.F.,] had been interviewed by [DHS], she did not disclose sexual abuse. It was also stipulated that Appellant was born on December 13, 1975. The respective dates of birth of each of Appellant's four biological children including [AL.F. and A.F.] were entered by way of stipulation as well. Appellant's brother, John Lind, testified that Appellant had a reputation as being a peaceful and nonviolent citizen.

Appellant testified, without any presented emotional affect, at trial that her four biological children had never even entered the bedroom[ with R.F.]. She calmly denied playing any pornographic videos. She denied sexually abusing [AL.F. and A.F.]. She denied witnessing any sexual abuse from [R.F.]. She claimed to have no idea why [C]hildren had accused her. She

had also claimed that her home had been quite suitable for habitation for her family that had also included her disabled mother.

Trial Court Opinion, 1/10/2019, at 2-6 (citations omitted). Following trial, on March 2, 2018, Appellant was convicted of the aforementioned crimes.

On May 18, 2018, following full and fair sentencing hearing during which th[e trial c]ourt heard argument and victim impact testimony as well as testimony on behalf of Appellant and after review of all sentencing factors and incorporation of considered pre-sentence investigative [(PSI)] report[ and] mental health assessments[, at docket number] CP-51-CR-0006458-2017, Appellant was sentenced to consecutive terms of incarceration of 10 to 20] years of incarceration for conspiracy [to commit rape of a child]; three and one-half [] to seven [] years of incarceration for endangering the welfare of child; and three and one-half [] to seven [] years for corruption of minors. The two remaining conspiracy counts merged into the sentence for conspiracy [to commit rape of a child].

Under CP 51-CR-0006459-2017, [] Appellant was sentenced to consecutive terms of incarceration of [10 to 20] years for unlawful contact with minor; [10 to 20] years for conspiracy [to commit rape of a child,] three and one-half [] to seven [] years for endangering welfare of [a] child; [and] three and one-half [] to seven [] years for corruption of minors. The two remaining conspiracy counts merged into the sentence for conspiracy [to commit rape of a child. The sentences at the abovementioned docket numbers were ordered to run consecutively to one another].

In each case Appellant had been deemed without objection as a Tier II Sexual Offender. Due notice of reporting and registration requirements were provided. Rehabilitative conditions were imposed which had included no contact [with] Appellant's children and prosecution witnesses. The Commonwealth's representative did not pursue designation of Appellant as a Sexual [Violent Predator (SVP)]. Post-sentence motions requesting reconsideration of sentence and a new trial were timely filed and denied without hearing on June 13, 2018.

*Id.* at 6-7 (unnecessary capitalization and citations omitted).

This appeal followed.[1]   On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain her convictions, as well as the discretionary aspects of her sentence.   Appellant's Brief at 5.   We review these claims sequentially.

Regarding Appellant's sufficiency claim, before we address the merits of this issue, we consider whether she preserved it for appeal.

> An appellant's concise statement must properly specify the error to be addressed on appeal. In other words, the Rule 1925(b) statement must be specific enough for the trial court to identify and address the issue [an appellant] wishe[s] to raise on appeal. [A c]oncise [s]tatement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no [c]oncise [s]tatement at all.  The court's review and legal analysis can be fatally impaired when the court has to guess at the issues raised. Thus, if a concise statement is too vague, the court may find waiver.

*Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa. Super. 2011) (internal citations and quotations omitted).

Appellant's Pa.R.A.P. 1925(b) statement does not specify precisely which elements of which crimes she contends the Commonwealth failed to prove.   *See* Concise Statement, 6/14/2018 ("Counsel intends to raise a claim that the verdicts were against the sufficiency of the evidence.").   This Court has repeatedly required an appellant to specify in the Rule 1925(b) statement the particular element or elements upon which the evidence was insufficient.   *See, e.g., Commonwealth v. Roche*, 153 A.3d 1063, 1072

---

[1] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

(Pa. Super. 2017). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Commonwealth v. Stiles*, 143 A.3d 968, 982 (Pa. Super. 2016) (citing *Commonwealth v. Garland*, 63 A.3d 339 (Pa. Super. 2013)). Based upon this Court's desire to apply Rule 1925 in a "predictable, uniform fashion," this Court has determined that waiver applies even where, as here, the Commonwealth fails to object and the trial court addresses the issue in its Rule 1925(a) opinion. *Roche*, 153 A.3d at 1072 (holding that where Roche was convicted of first-degree murder and criminal conspiracy, a concise statement asserting only that the evidence was insufficient to sustain these convictions resulted in waiver); *Commonwealth v. Tyack*, 128 A.3d 254, 260 (Pa. Super. 2015) (holding that Tyack's "boilerplate" concise statement declaring "that the evidence was insufficient to support his conviction" was too vague even where Tyack was convicted only of one crime). In light of the foregoing, we find Appellant's sufficiency claim waived.

Regardless, even if Appellant did not waive her sufficiency claim, she would still not be entitled to relief. Our standard of review in challenges to the sufficiency of the evidence is to determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the

- 7 -

facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

***Commonwealth v. Gonzalez***, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

On appeal, Appellant argues "[t]he evidence was weak and inconclusive" based upon the inconsistencies in A.F.'s testimony. **See** Appellant's Brief at 10-11 ("[A.F.] stated at trial the events concerning the sexual abuse took place when she was seven or six. However, at a preliminary hearing [A.F.] stated she could not remember how old she was when the sexual assaults took place. Also, when being interviewed by the Philadelphia Children's Alliance, [A.F.] could not remember when the events took place. [A.F.] stated that the sexual assault happened in [Appellant's] room on multiple days. At a preliminary hearing [A.F.] testified that it happened on one day.") (citations omitted). Furthermore, Appellant noted that despite A.F. testifying about Appellant's abuse of Children's younger siblings, DHS took no further action regarding these allegations and "[i]n fact, it was stipulated at trial that when O.F. was interviewed[,] she did not disclose any abuse." **Id.**

Here, while presented as a sufficiency claim, Appellant's argument on appeal is essentially challenging the weight of the evidence, asking this

Court to assess the credibility of testifying witnesses and reweigh the evidence presented at trial. This we will not do. Our case law is clear that the finder of fact is "in the best position to view the demeanor of the Commonwealth's witnesses and to assess each witness'[s] credibility." *Commonwealth v. Olsen*, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). Thus, it was within the province of the jury, as fact-finder, to believe A.F's testimony that Appellant engaged in physical and sexual abuse of Children and discredit the testimony of Appellant that she was innocent of the crimes charged. *See Commonwealth v. Charlton*, 902 A.2d 554, 562 (Pa. Super. 2006) (recognizing that "testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses. If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict.") (internal quotation marks and citations omitted). *See also Commonwealth v. Miller*, 172 A.3d 632, 642 (Pa. Super. 2017) ("Resolving contradictory testimony and questions of credibility are matters for the finder of fact.").

Moreover, even if we were to review this issue as a properly preserved sufficiency claim, we would conclude that the Commonwealth met its burden of proving each and every element of the crimes for which Appellant was convicted. As aptly set forth by the trial court:

Rape of a child involves sexual intercourse by forcible compulsion or threat of forcible compulsion where the victim is under the age of 13[.] 18 Pa.C.S. [§] 3121. [IDSI] with a child involves anal intercourse by forcible compulsion or threat of forcible compulsion where the victim is under the age of 13[.] 18 Pa.C.S. [§] 3123, 18 Pa.C.S. [§] 3101. Incest involves sexual intercourse with a descendant[.] 18 Pa.C.S. [§] 4302.

Endangering the welfare of children involves violating a duty of care, protection or support[.] 18 Pa.C.S. [§] 4304. Corruption of minors involves any act that tends to corrupt the morals of a minor[.] 18 Pa.C.S. [§] 6301. Unlawful contact with [a] minor involves being intentionally in contact with a minor for the purpose of committing a sexual offense enumerated in Chapter 31 of Pennsylvania Consolidated Statutes[.] 18 Pa.C.S. [§] 6318.

At trial it was overwhelmingly demonstrated that Appellant [and R.F.] had entered into a conspiracy to systematically sexually and physically abuse their four minor children over a period of years. Their abhorrent ongoing conduct included forcible anal and vaginal intercourse, the display of pornographic movies, the touching of private parts of their bodies, applying substances to their bodies, physical beatings and directing and ordering of the children to engage in sexual activities with each other.

Rather than attempt to stop the abuse as a responsible parent, Appellant had pleasurably participated with [R.F.] as he and [Appellant] sexually violated every private orifice of each minor child, who ranged in ages from six years old to a toddler. Appellant cruelly laughed while the children engaged in these forced sexual activities.

Trial Court Opinion, 1/10/2019, at 8-9. In light of the foregoing, Appellant's sufficiency claim fails.

We now turn to Appellant's weight-of-the-evidence issue. In support of her weight claim, Appellant cites the same inconsistencies in A.F.'s testimony as set forth *supra*. Appellant's Brief at 11-12. In sum, Appellant

claims "[t]he inconsistent testimony is a shock to one's sense of justice and a new trial should be granted." *Id.* at 12.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

> However, the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is not unfettered. The propriety of the exercise of discretion in such an instance may be assessed by the appellate process when it is apparent that there was an abuse of that discretion.

*Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (internal citations omitted). *See also Commonwealth v. Britton*, 134 A.3d 83, 86 (Pa. Super. 2016) ("The trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.") (citation omitted).

The trial court found the testimony of Children to be "credible and compelling. The heartbreaking accounts of unspeakable horrors was corroborated by the testimony of" C.A., Mr. Li, Ms. Kline, "and the videotapes of [Children's] interviews. The cumulative evidence of guilt was overpowering." Trial Court Opinion, 1/10/2019, at 10.

- 11 -

In reviewing the issue before us, we reiterate that "[a]ppellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence." **Widmer**, 744 A.2d at 753.

> The term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion, within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Id.** (citation omitted).

With this in mind, upon review of the record, we discern no abuse of discretion in the trial court's determination. Here, the jury had the opportunity to hear all evidence presented and assess the credibility of those who testified. This included listening to defense counsel speak at length during closing about the inconsistences in the testimony presented. Despite this, it is evident by the jury's verdict that they found that not only was A.F. credible, but that her testimony, in conjunction with the additional evidence and testimony, including corroborating testimony from her brother, AL.F., supported the finding that Appellant physically and sexually abused Children. Moreover, Appellant has not alleged, and we do not conclude, that the trial court acted unreasonably, or displayed prejudice, bias, or ill-will when denying Appellant's weight claim. No relief is due.

- 12 -

Lastly, Appellant challenges the discretionary aspects of her sentence. Appellant's Brief at 13-14. Accordingly, we bear in mind the following.

> Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. An appellant challenging the discretionary aspects of his [or her] sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (some citations omitted). Here, Appellant timely filed a post-sentence motion and notice of appeal, and included a statement pursuant to Rule 2119(f) in her brief. We now turn to consider whether Appellant has presented a substantial question for our review.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. ***Commonwealth v. Paul***, 925 A.2d 825, 828 (Pa. Super. 2007). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the

sentencing process." *Griffin*, 65 A.3d at 935 (citation and quotation marks omitted).

In her 2119(f) statement, Appellant's claims her sentence is "manifestly excessive and imposed in violation of the Sentencing Code[.]" Appellant's Brief at 13. Specifically, Appellant contends her aggregate sentence of 44 to 88 years' incarceration "is virtually a life sentence."[2] *Id*.

> Under 42 Pa.C.S.[] § 9721, the [trial] court has discretion to impose sentences consecutively or concurrently and, ordinarily, a challenge to this exercise of discretion does not raise a substantial question. The imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment.

*Commonwealth v. Moury*, 992 A.2d 162, 171–72 (Pa. Super. 2010) (citations omitted).

> [A] sentence can be so manifestly excessive in extreme circumstances that it may create a substantial question. When determining whether a substantial question has been raised, we have focused upon whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct in this case.

*Commonwealth v. Zirkle*, 107 A.3d 127, 133–34 (Pa. Super. 2014) (citations and quotation marks omitted).

---

[2] Within the argument section of her brief, Appellant contends the "trial court failed to sufficiently take into consideration the rehabilitative needs of [Appellant], her lack of prior record and the sentencing guidelines when imposing sentence." Appellant's Brief at 14.

In this case, prior to sentencing, the trial court set forth the guideline ranges for each of the crimes Appellant was convicted. N.T., 5/18/2018, at 6-9. Furthermore, the trial court noted that "in addition to presiding over the jury trial and listening to all the testimony, th[e trial court had] reviewed in depth the mental health assessment of [Appellant] as well as the [PSI[3]] report conducted pursuant to the [trial c]ourt's order." *Id.* at 5. Moreover, the trial court heard statements made by Appellant, her brother and cousin, as well as listened to victim impact statements.

In addition, the trial court gave sufficient justification for any deviation from the guidelines. Specifically, at sentencing, the trial court set forth the following.

> [T]o the extent I deviate upward, it is for the following reasons, ma'am. The amount of damage that you have done to your children, to whom you have been entrusted their care, is immeasurable. The damage is permanent. The trauma that resulted had a rippling effect to traumatizing other children within their sphere. The genesis of all of that is you. And yet you sat here and you spoke. The only time I saw any, any ounce of emotion, whatsoever, was when I said you were supposed to be weaned off of the methadone that has been your crutch, and that [was it]. I took great care throughout this trial to listen very intensely to everything. I daresay that the rippling effect of the trauma that was in this case was felt by even folks in my courtroom, including the jury and our court officers. This case will haunt me.

---

[3] "[W]here the sentencing judge had the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1038 (Pa. Super. 2016).

- 15 -

I have evaluated and tried to understand what cannot be understood. I take into account your longstanding abuse of various narcotics that you give varying versions in reference. You stand before me at the age of forty-three years old with an alcohol and narcotics abuse history beginning at the age of fourteen. Your abuse of various narcotics to which [R.F.] also died in January 2016, your co-abuser, was extensive but by no means an excuse for your behavior. It was alcohol, progressed to marijuana, heroin, morphine, cocaine, methamphetamine, PCP. And it was remarked by the mental health assessment that methadone was your drug of abuse beginning at the age twenty-four along with heroin most particularly.

* * *

It did not go unnoticed by th[e trial c]ourt that in addition to the sexual abuse committed by you, the reason that these children were removed from your care in the first place was because of the horrendous, horrendous conditions that were very visible within their home to anybody that actually would go there. They were removed from a home that you wouldn't put dogs or cats in. The longstanding nature and methods of your abuse are part and parcel of my sentence. You used your children, your babies, as sexual playthings for your enjoyment and the enjoyment of [R.F.]. And you can shake your head all you want, but I believe them. It is beyond my comprehension as to why the need for self-gratification in that manner.

N.T., 5/18/2018, at 29-31.

It is clear to this Court that the trial court took into account all necessary considerations, including the mitigating factors presented by Appellant. Nonetheless, for the reasons cited *supra*, the trial court determined that a lengthy period of incarceration was appropriate in light of the heinous nature of the crimes Appellant was convicted of. We find no abuse of discretion in this determination. Nor has Appellant demonstrated to this Court that "the sentencing court ignored or misapplied the law,

exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." ***Commonwealth v. Johnson***, 125 A.3d 822, 826 (Pa. Super. 2015) (quoting ***Commonwealth v. Disalvo***, 70 A.3d 900, 903 (Pa. Super. 2013)).

Accordingly, after a review of the briefs, record, and applicable case law, we are not persuaded that Appellant's issues warrant relief from this Court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 8/1/19