J-A09032-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| v. | : | |
| ROBERT METZ, | : | |
| Appellant | : | No. 730 WDA 2019 |

Appeal from the Judgment of Sentence Entered April 4, 2019
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010016-2018

BEFORE: SHOGAN, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: FILED JUNE 26, 2020

Robert Metz (Appellant) appeals from the April 4, 2019 judgment of sentence of an aggregate term of 15 to 30 years of incarceration imposed after he pleaded guilty to murder of the third degree and abuse of a corpse.[1] We affirm.

The following summary of facts was offered by the Commonwealth at Appellant's guilty plea hearing.

> [H]ad this matter proceeded to trial, the Commonwealth would have presented the testimony of Detectives Michael Kirtley and David Sciullo of the Ross Township Police Department, Detective Charles Hanlon and Detective Shawn Dady of the City of

---

[1] We note that Appellant purported to appeal from the April 15, 2019 order denying his post-sentence motion. "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." Commonwealth v. Shamberger, 788 A.2d 408, 410 (Pa. Super. 2001) (citation omitted). We have corrected the caption accordingly.

---

* Retired Senior Judge assigned to the Superior Court.

Pittsburgh Police Department, along with various records custodians, forensic technicians and civilian witnesses, who collectively would have testified that on or about June 19th, 2018, Pittsburgh Police received a walk-in report from one Kristen Miller, that her mother, Dolores Miller [(Victim)], had not been seen since June 16th, 2018.

City detectives began to investigate [Victim's] disappearance as a missing person and found that [Victim's] whereabouts could not be accounted for after June 17th, 2018.

Detectives received information on the date of the initial report that [Victim] had been involved in an extramarital romantic relationship with a then unknown individual.

On or about June 20th, 2018, investigating detectives received [Victim's] phone records and noted a 22-minute call on the date of her disappearance. A Google search of the second number involved yielded the name [of Appellant].

Detectives called this number and spoke to a man subsequently identified as [Appellant], who informed them that he was dating [Victim] and had last seen her on June 17th, 2018, at his apartment and that she had left from there to go to the casino.

Detectives reviewed surveillance footage from the Rivers Casino which depicted a male, also subsequently identified as [Appellant], parking [Victim's] vehicle in a parking space in the casino's parking garage. The same individual was depicted returning to the casino a short time later in another vehicle and moving [Victim's] vehicle so that the rear was no longer visible.

After receiving this information, detectives obtained an address for [Appellant] at the Perrytown Apartments in Ross Township, in Allegheny County, and contacted Ross Township detectives to meet them at that location.

Detectives observed that [Appellant's] vehicle was parked in the building's parking lot. Detectives went upstairs to [Appellant's] apartment and knocked for several minutes, placing another phone call, without receiving an answer.

After multiple attempts, detectives contacted the building manager to open the door so that they could perform a welfare check on [Appellant]. The manager arrived with a key, and after calling for [Appellant] again, detectives entered the residence.

Immediately upon entering, detectives observed a deceased female, later identified as [Victim], on the floor of the apartment. Detectives entered further into the apartment in search of [Appellant] and found him in a bathtub filled with bloody water, holding a large kitchen knife.

After ignoring multiple commands to drop the knife and [to stop] advancing towards detectives, [Appellant] ultimately set the knife down and was placed into custody without further incident.

After receiving medical treatment for minor lacerations to his wrist and groin area, [Appellant] was transported to the Ross Township Police Department for interview. After being advised of his Miranda[2] rights, [Appellant] informed detectives that he had begun dating [Victim] in December of 2017 and had been dating her for approximately six months. [Victim] had arrived at his apartment on the afternoon of June 17th, 2018. [Appellant] indicated that he had decided at that time to terminate their relationship because [Victim] would not leave her husband for him.

As she completed gathering her belongings from his apartment, [Appellant] placed both hands around her throat and strangled her for what felt like a couple of minutes, until blood began to come from her mouth and nose. He did not call for medical aid, as he searched for a pulse and did not feel one.

After killing [Victim], [Appellant] gathered her belongings and placed some in her car and some in his. He took her vehicle and left it parked in the Rivers Casino parking lot, returning in his own vehicle approximately one hour later to turn it around so that the license plate would not be visible.

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

On June 18th, 2018, he took [Victim's] phone and threw it into North Park Lake in an attempt to keep it from being tracked to his apartment. [Appellant] reported that he had not moved or otherwise attended to [Victim's] body from the time of her death on the afternoon of June 17th, 2018, until its discovery by detectives on June 20th.

[Victim's] body was removed from [Appellant's] apartment and transported to the Allegheny County Office of the Medical Examiner, where on June 21st, 2018, an autopsy was performed by Dr. Todd Luckasevic at M.E. Case No. 18COR05071. Final pathological diagnoses included manual strangulation, as evidenced by indicative hemorrhaging of multiple parts of the eyes and neck, bilateral pulmonary edema, dermoid cyst of the right ovary and early stages of decomposition.

It would have been the opinion [of Dr. Luckasevic] that [Victim], a 56-year-old white female, died as a result of manual strangulation, the manner of death being homicide.

N.T., 1/7/2019, at 6-11.

Based on the foregoing, Appellant was charged with criminal homicide, abuse of a corpse, and tampering with or fabricating physical evidence. On January 7, 2019, Appellant pleaded guilty to murder of the third degree and abuse of a corpse.[3] Sentencing was deferred to allow for a pre-sentence investigation (PSI) report. On April 4, 2019, the trial court sentenced Appellant to consecutive terms of 14 to 28 years of incarceration for murder of the third degree, and 1 to 2 years of incarceration for abuse of a corpse.

---

[3] The Commonwealth withdrew the charge of tampering with or fabricating physical evidence. N.T., 1/7/2019, at 4.

Appellant timely filed a post-sentence motion, which the trial court denied on April 15, 2019. This timely-filed appeal followed.[4]

On appeal, Appellant asks us to review whether "the trial court abused its sentencing discretion when it sentenced [Appellant] without properly considering mitigating factors and failing to adequately address his rehabilitative needs in relation to his mental health concerns as well as the de facto life sentence imposed by the trial court." Appellant's Brief at 4.

Appellant challenges the discretionary aspects of his sentence.[5] Thus, we consider this issue mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the

---

[4] Both Appellant and the trial court complied with Pa.R.A.P. 1925. On May 20, 2019, the trial court directed Appellant to file a concise statement of matters complained of on appeal. On July 24, 2019, Appellant filed a petition for permission to file a concise statement nunc pro tunc, which the trial court granted on July 29, 2019.

[5] Because Appellant entered an open guilty plea, he is not precluded from appealing the discretionary aspects of his sentence. See Commonwealth v. Tirado, 870 A.2d 362, 365 n.5 (Pa. Super. 2005) (citations omitted).

court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

Commonwealth v. DiClaudio, 210 A.3d 1070, 1074-75 (Pa. Super. 2019) (quoting Commonwealth v. Antidormi, 84 A.3d 736, 760-61 (Pa. Super. 2014)).

> An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:
>
>> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

DiClaudio, 210 A.3d at 1075 (quoting Commonwealth v. Samuel, 102 A.3d 1001, 1006-07 (Pa. Super. 2014)).

Appellant has satisfied the first three requirements: he timely filed a notice of appeal, preserved his issues in a post-sentence motion, and included a Pa.R.A.P. 2119(f) statement in his brief. See Appellant's Brief at 16-22. Therefore, we now consider whether Appellant raises a substantial question for our review.

> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were

either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

DiClaudio, 210 A.3d at 1075 (citations and quotation marks omitted).

In his Pa.R.A.P. 2119(f) statement, Appellant contends that Appellant's "sentence was manifestly excessive because it placed inordinate focus on the impact statements generally, as well as the cover[-]up in the three days following [the] murder, at the expense of [Appellant's] copious mitigating evidence and [Appellant's] rehabilitative needs." Appellant's Brief at 20-21. Specifically, Appellant claims the trial court did not consider adequately Appellant's history of severe depression, suicidal ideation, suicide attempts, remorse, regret, age of 69 years at the time of sentencing, long career as a postal employee, lack of criminal convictions, family statements made at the sentencing hearing in support of him, cooperation with the police, recorded confession, and acceptance of responsibility for his actions. Id. at 21. Appellant also claims the trial court failed to articulate reasons for imposing a sentence of total confinement rather than partial confinement pursuant to 42 Pa.C.S. § 9725. Id. at 21-22.

"[W]e have held that a claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question." Commonwealth v. Zirkle, 107 A.3d 127, 133 (Pa. Super. 2014); see also Commonwealth v. Patterson, 180 A.3d 1217, 1233 (Pa. Super. 2018) (finding no substantial question raised where Patterson claimed "the trial court failed to

fully consider mitigating factors such as appellant's age, prior record score, lack of violent tendencies prior to the shooting, and appellant's belief that his life was in danger"); Commonwealth v. Moury, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted) ("The sentencing discourse demonstrated the court considered the particular circumstances of the offenses, [Moury's] role, and [his] character when sentencing. That the court refused to weigh the proposed mitigating factors as [Moury] wished, absent more, does not raise a substantial question.").[6] A trial court's failure to state sufficiently reasons for the sentence imposed raises a substantial question. Commonwealth v. Simpson, 829 A.2d 334, 338 (Pa. Super. 2003). Thus, Appellant's first claim does not present a substantial question for our review,[7] but his second claim does.

---

[6] To the extent Appellant claims that the trial court abused its discretion because the sentence imposed amounted to a de facto life sentence, such claim is premised solely on his argument that the trial court failed to consider his mitigating circumstances, including his age of 69 years at the time of sentencing. Appellant's Brief at 25, 30-31 n.3. Such a claim does not present a substantial question. See Commonwealth v. Radecki, 180 A.3d 441, 469 (Pa. Super. 2018) (finding claim that trial court inadequately considered mitigating factors, specifically Radecki's "advanced age" of over seventy years, when it imposed an aggregate sentence of 133 to 266 months failed to raise a substantial question).

[7] Even if Appellant had presented a substantial question with this claim, it is nothing more than a request for this Court to reweigh the sentencing factors differently than the trial court. See Appellant's Brief at 20-21, 25, 29-31, 35. As discussed infra, the trial court reviewed the PSI report, and considered the circumstances of the offenses, victim impact statements, testimony from Appellant's family, and Appellant's allocution. "[W]here the
(Footnote Continued Next Page)

"Although a sentencing judge must state his or her reasons for the sentence imposed, a discourse on the court's sentencing philosophy … is not required." Simpson, 829 A.2d at 338 (citation and internal quotation marks omitted). At the sentencing hearing, the trial court explicitly stated that it had reviewed Appellant's PSI report and invited counsel for the parties to make any corrections or additions at the hearing. N.T., 4/4/2019, at 6. The court also heard victim impact statements and testimony from fourteen family members, friends, and co-workers describing Victim as loving, supportive, kind, and hardworking, and expressing their pain, heartbreak, and grief in losing her in such a violent way, id. at 3-39; testimony from five members of Appellant's family discussing their shock at and disbelief of his crimes due to Appellant's lack of criminal history or propensity toward violence, Appellant's willingness to help his family and others, including his

(Footnote Continued) ───────────────

sentencing judge had the benefit of a [PSI] report, it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." Commonwealth v. Finnecy, 135 A.3d 1028, 1038 (Pa. Super. 2016) (citation and internal quotation marks omitted). "Having been fully informed by the [PSI] report, the sentencing court's discretion should not be disturbed." Commonwealth v. Devers, 546 A.2d 12, 18 (Pa. 1988). Moreover, "[a]n abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." Moury, 992 A.2d at 170 (citation and quotation marks omitted). Accordingly, even if Appellant had presented a substantial question with this claim, we would conclude that it fails.

mother in a nursing facility and his father when he had serious health issues, his employment at the post office, and his history of mental illness and suicide attempts, id. at 40-54; Appellant's allocution expressing regret and remorse, and stating that he had attempted suicide four times after the murder, that he was not asking for forgiveness, and that he was unsure he could ever forgive himself, id. at 54-56; and the attorneys' arguments, id. at 56-61. Thereafter, the trial court gave the following explanation for concluding a sentence of incarceration was appropriate.

> First of all, I wish to say to [the family] and other individuals that spoke on behalf of [Victim] that you certainly conveyed the persona of [Victim] and you have certainly conveyed to me how this terrible, tragic crime has fractured your lives, traumatized you, [caused you] great anxiety, in those few days where you just didn't know where your mother, your aunt, your wife was, your friend. She certainly was a good woman, a hard-working woman, and her death was certainly horrific. Strangulation is a horrific crime.
>
> Also hearing from [Appellant's] family, you conveyed to me that your brother, your father, [] your brother, in this case was essentially a good man up to June 17th of 2018 where he committed this horrendous deed.
>
> What bothers me about the crime was the follow[-]up after by [Appellant] trying to cover it up. It's oftentimes the cover[-]up, though cover[-]up would never exceed killing someone, which [Appellant] certainly did here. But it is an aggravating factor[.]
>
> So taking into consideration all of these factors, I'm going to sentence [Appellant] for his third degree murder, a Felony 1, of [Victim], to 14 to 28 years in a State Correctional Institution. I'm also going to sentence him for his abuse of the corpse, a Misdemeanor 2, to 1 to 2 years to run consecutive for a total sentence of 15 to 30 years in the State Correctional Institution.

- 10 -

Id. at 62-63. The trial court expounded on its sentence in its opinion, explaining it

> based its sentence on the fact that [Appellant], after strangling [Victim] for "what felt like a couple of minutes, until blood began to come from her mouth and nose," [N.T., 1/7/2019, at 10,] attempted to cover-up his crime by driving her vehicle and leaving it at the casino. He then returned to the casino and turned her vehicle so that the license plate would not be visible and threw her cell phone into a lake. This cover-up attempt was found to be an aggravating factor by [the trial court] that necessitated a total sentence of fifteen to thirty years.

Trial Court Opinion, 8/13/2019, at 5-6 (unpaginated). The trial court further explained that in light of 42 Pa.C.S. § 9725,[8] it concluded that total confinement was necessary. Id. at 5 (unpaginated). Relying on Moury, the trial court also noted that "'where a sentence is within the standard range of

---

[8] Section 9725 states as follows.

The court shall impose a sentence of total confinement if, having regard to the nature and circumstances of the crime and the history, character, and condition of the defendant, it is of the opinion that the total confinement of the defendant is necessary because:

(1) there is undue risk that during a period of probation or partial confinement the defendant will commit another crime;

(2) the defendant is in need of correctional treatment that can be provided most effectively by his commitment to an institution; or

(3) a lesser sentence will depreciate the seriousness of the crime of the defendant.

42 Pa.C.S. § 9725.

the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code.'" Id., quoting Moury, 992 A.2d at 171.[9]

As discussed supra, the trial court sentenced Appellant to 14 to 28 years of incarceration for murder of the third degree and 1 to 2 years of incarceration for abuse of a corpse. The court explained it was aggravating Appellant's sentence due to the horrific nature and circumstances, i.e., strangling Victim until blood came from her mouth and nose, and Appellant's attempts to cover up the murder, i.e., moving Victim's vehicle to the casino, returning to change the car's position to hide its license plate, and disposing

_____

[9] The standard range of the sentencing guidelines for murder of the third degree was six to twenty years, with a statutory maximum of forty years. Sentencing Guidelines, 4/4/2019, at 1 (unpaginated). The standard range for abuse of a corpse was restorative sanctions to one month of incarceration, with four months in the aggravated range and a statutory maximum of two years. Id. at 2 (unpaginated). Thus, the sentence imposed by the trial court for murder fell within the standard range of the sentencing guidelines, but the sentence for abuse of a corpse was outside the guidelines, falling above the aggravated range but below the statutory maximum.

To the extent Appellant argues that the trial court failed to state its reasons for sentencing outside the guidelines, see Appellant's Brief at 20, 23-24, such argument is waived for failure to raise it below at sentencing or in his post-sentence motion. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). Regardless, for the reasons discussed herein, this claim is without merit because the trial court placed its reasons on the record. See Commonwealth v. Pollard, 832 A.2d 517, 526 (Pa. Super. 2003) (finding trial court's sentence was "not unreasonable" when it sentenced Pollard to a standard range sentence for murder and conspiracy, but outside the guidelines to one to two years for abuse of corpse, where trial court relied on PSI report, and considered "victim impact statements as it concerns the manner in which the victim's corpse was left" and Pollard's allocution).

of Victim's cell phone in a lake. N.T., 4/4/2019, at 62-63; Trial Court Opinion, 8/13/2019, at 6 (unpaginated). Moreover, the trial court indicated it had reviewed Appellant's PSI report and had the benefit of hearing victim impact statements and testimony, mitigating testimony from Appellant's family, Appellant's allocution, and argument from counsel for the parties.

In light of the foregoing, we conclude the court sufficiently stated its reasons for the sentence Appellant received and Appellant has failed to demonstrate that the trial "court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision" in imposing Appellant's sentence. DiClaudio, 210 A.3d at 1075. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2020