J-A02013-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JIMMY G. MITCHELL | : | |
| | : | |
| Appellant | : | No. 58 WDA 2021 |

Appeal from the Judgment of Sentence Entered July 10, 2020
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0002780-2019

BEFORE:   OLSON, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY OLSON, J.:                    **FILED: MARCH 11, 2022**

Appellant, Jimmy G. Mitchell, appeals from his judgment of sentence entered on July 10, 2020, following his convictions for aggravated assault, simple assault, and disorderly conduct,[1] as made final by the denial of his post-sentence motion on December 8, 2020.  After careful review, we affirm Appellant's conviction but vacate his judgment of sentence and remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(3), 2701(a)(1), and 5503(a)(1), respectively.  After the jury verdict, the trial court also found Appellant guilty of harassment, 18 Pa.C.S.A. § 2709(a)(1), graded as a summary offense.  **See** N.T. Jury Trial, 7/8/20, at 80; **see also Commonwealth v. Smith**, 868 A.2d 1253, 1257 (Pa. Super. 2005) (recognizing that right to a jury trial does not apply to summary offenses).

J-A02013-22

The trial court summarized the following facts adduced at Appellant's July 8, 2020 jury trial:[2]

> On September 18, 2019, Appellant was admitted to the Emergency Room at Uniontown Hospital. This was due to [Appellant] exhibiting symptoms related to severe mental impairments. The victim, who is employed as an Emergency Medical Technician [("EMT")] by Fayette [Emergency Medical Services ("EMS"),] testified that he and his partner were dispatched to the Emergency Room at Uniontown Hospital on September 19, 2019 for the purpose of transporting Appellant to Somerset Hospital for a scheduled psychiatric evaluation.
>
> The victim testified that when he arrived at Uniontown Hospital, two security guards were standing outside of Appellant's room. The victim was informed that Appellant had admitted himself to the hospital [] seeking a voluntary mental health evaluation. The victim further testified that when he first observed Appellant, he could tell that Appellant required a mental health evaluation and further stated that the hospital nurse informed him and his partner that Appellant had come to the Emergency Room the previous night with suicidal thoughts. The victim testified that Appellant appeared to be delusional when Appellant was first assessed for transport. The victim further stated that in his [28] years of experience as an EMT, suicidal patients being transported can be unpredictable.
>
> The victim further testified that Appellant was placed into the rear of the ambulance and restrained by three straps for safe transport to Somerset. The victim rode in the back with Appellant while his partner drove the ambulance. The victim stated that Appellant was cooperative and engaging in small talk during the first part of the trip. The victim then testified that Appellant suddenly "flipped out" somewhere on Route 199 and began punching the victim in the face several times. The victim testified that while he has no idea why Appellant suddenly began striking him, he believed it was likely as a result of Appellant's mental impairments.
>
> Appellant testified that he has suffered from psychiatric issues all his life, and has been previously diagnosed with paranoid

---

[2] To protect the identity of the victim, we omit his name and refer to him as "the victim."

- 2 -

schizophrenia, bipolar disorder, and depression. Appellant testified that he constantly hears voices when in a manic state and that he has been hospitalized on previous occasions for mental health problems. Appellant testified that he recalled going to the Emergency Room and signing voluntary commitment papers so that a psychiatric evaluation could be performed, but that everything "went completely black" after that and he does not recall entering the ambulance or striking the victim *en route* to Somerset.

Trial Court Opinion, 3/3/21, at 2-4 (record citation omitted). The jury found Appellant guilty of the aforementioned charges. Two days later, on July 10, 2020, the trial court sentenced Appellant to 21 to 42 months' incarceration at a state correctional institution. Appellant filed a post-sentence motion on July 20, 2020. After a hearing and post-hearing submissions by the parties, the trial court denied Appellant's post-sentence motion in an opinion and order entered on December 8, 2020. This appeal followed.[3]

Appellant presents the following issues for review:

1. Whether the trial court erred in denying [Appellant] the opportunity to cross-examine [the victim] about his receipt of workers' compensation benefits where the Commonwealth repeatedly referenced [the victim's] inability to return to work due to his injuries?

2. Whether the jury's verdicts convicting [Appellant] of aggravated assault and simple assault were against the weight of the evidence given the evidence that [Appellant] was experiencing

_____

[3] Both Appellant and the trial court complied with Pa.R.A.P. 1925.

We note that the Honorable Senior Judge Gerald R. Solomon presided over Appellant's trial and sentencing. On December 8, 2020, Judge Solomon issued an opinion before retiring denying Appellant's post-sentence motion. The case was then reassigned to the Honorable Joseph M. George, Jr. who penned the March 3, 2021 Rule 1925(a) opinion.

a mental health crisis at the time of the assault and was being transported to Somerset Hospital for a mental health evaluation?

3. Whether the trial court erred as a matter of law and abused its discretion in imposing a sentence of state incarceration where the trial court failed to consider and apply all of the sentencing factors under Pa.C.S.[A.] § 9721(b), failed to thoroughly examine [Appellant's] background and character, and failed to state sufficient reasons for dispensing with the presentence investigation [("PSI") report] prior to imposing sentence?

Appellant's Brief at 6-7.

Appellant's first issue challenges the trial court's refusal to permit cross-examination of the victim regarding his receipt of workers' compensation benefits. At trial, the court precluded cross-examination about the victim's receipt of workers' compensation benefits on grounds that such testimony would be irrelevant. In Appellant's view, the court's evidentiary ruling denied him the opportunity to impeach the victim's credibility by demonstrating that the victim had monetary motivations to remain off work. *See* Appellant's Brief at 18. Appellant further contends that this evidence would show that the assault was not the result of personal animus. *Id.* Because we agree that evidence of the victim's receipt of workers' compensation benefits was not relevant to whether Appellant assaulted the victim, we conclude that Appellant's claim is unavailing.

Our standard of review governing a challenge to the admissibility of evidence is well-settled.

Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an

- 4 -

abuse of the trial court's discretion.  An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence of record.  If[,] in reaching a conclusion[,] the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

"Evidence is generally admissible if it is relevant – that is, if it tends to establish a material fact, makes a fact at issue more or less probable, or supports a reasonable inference supporting a material fact – and its probative value outweighs the likelihood of unfair prejudice."  *Commonwealth v. Gilbert*, -- A.3d. --, 2022 WL 211966 at *5 (Pa. Super., filed Jan. 25, 2022) (quotation marks omitted); *see also* Pa.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.").  Evidence that is not relevant is not admissible.  Pa.R.E. 402.

Appellant argues that evidence of the victim's receipt of workers' compensation benefits was admissible to demonstrate the victim's "motivations for secondary gain from workers' compensation" in not returning to work.  Appellant's Brief at 18.  Appellant also argues that this evidence would show the attack was not the result of personal animus.  *Id.*  Appellant fails, however, to demonstrate how the proffered evidence was relevant to a material fact of this case.

- 5 -

The trial court explained that the evidence was properly excluded because there was no testimony suggesting the attack was personal. On the contrary, both Appellant and the victim testified that they did not know each other prior to this incident.

> As such, there was no dispute as to this issue during trial and therefore, no requirement to admit evidence to dispute something that was not presented as an issue. The receipt of [w]orkers' [c]ompensation [b]enefits by [the victim] does not tend to prove or disprove a material fact and is therefore not relevant.

Trial Court Opinion, 3/3/21, at 5.

We agree with the trial court's conclusion that evidence of the victim's receipt of workers' compensation benefits was properly excluded as irrelevant. As the trial court opined, personal animus was never presented as an issue at trial where the victim and Appellant unanimously denied knowing each other prior to the episode at issue. Additionally, at trial, there was no dispute that the victim was injured as a result of Appellant's actions, and the defense, at trial, never disputed the extent of the victim's injuries. Rather, the disputed and material fact of consequence was Appellant's intent and whether his actions were impacted or caused by his purported mental impairments.[4]

---

[4] During closing arguments, Appellant's counsel framed the question for the jury as "[i]s this a medical problem that should be treated by the medical community or is this a criminal problem?" N.T. Jury Trial, 7/8/20, at 71. Counsel conceded, "I am not going to stand here and tell you that it was okay to punch an EMT. It is not okay. It is not okay. … We don't want that to happen." *Id.* Counsel argued, "it's unfortunate that this happened," but that Appellant "was having a medical issue that needed treatment and he just snapped" which was "a symptom of his mental impairment." *Id.* at 72-73.

Evidence of the victim's employment status *vis-a-vis* the receipt of workers' compensation benefits does not make it more or less probable that Appellant intended to cause the victim's injuries. The victim's "motivations for secondary gain" does not prove or disprove the impact of Appellant's mental health problems on his actions. Consequently, the victim's workers' compensation benefits were irrelevant and the trial court did not abuse its discretion in excluding such evidence at trial.

Appellant next argues that the jury's verdicts were against the weight of the evidence.

> The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.
>
> Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this Court does not review the underlying question of whether the verdict is against the weight of the evidence.
>
> > Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination [as to whether a] verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> Furthermore, in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous,

- 7 -

vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Delmonico***, 251 A.3d 829, 837 (Pa. Super. 2021) (internal citations, quotations, and brackets omitted).

To support his argument, Appellant contends that, while the evidence was legally sufficient, "he did not have the ability to form an intent to cause bodily injury to [the victim] but[,] rather[, he] was suffering [from] symptoms [of] his mental impairments that resulted in him striking [the victim]." Appellant's Brief at 21. He asserts that testimony established that Appellant was admitted to the hospital for suicidal ideation, he signed a voluntary commitment for a psychiatric mental evaluation, the victim was aware that this was the reason for the transport and testified that Appellant appeared delusional and in need of psychiatric help, and Appellant testified to his extensive mental health history and his lack of memory during this event. ***Id.***

In denying Appellant's post-sentence motion regarding his weight of the evidence claim, the trial court opined:

> With regard to this contention, the jury heard the testimony of the victim, as well [as testimony from] others, as to [Appellant's actions] and the injuries sustained by the victim. It also heard the testimony of [Appellant] in which he contended [that] he suffered from mental impairments. What the jury did not hear was testimony by any doctor that [Appellant] suffered from any mental impairment or mental illness. [Thus,] the weight of the evidence is exclusively for the finder of fact, who is free to believe all, none, or some of the evidence and to determine the credibility of the witnesses.

Trial Court Opinion, 12/8/20, at 2-3 (cleaned up).

We conclude that the trial court did not abuse its discretion in denying Appellant's weight of the evidence claim. While we disagree with the trial court's insinuation that **no** evidence was presented of Appellant's mental impairments – indeed, there was consistent testimony showing that the reason for the transport was for a mental health evaluation after Appellant was admitted to the hospital for mental health issues – we agree that Appellant did not present any medical documentation or witnesses evidencing his exact diagnosis and attending symptoms. In other words, Appellant failed to present any substantiating evidence that would establish a causal connection between his mental health issues and his actions during this incident.[5] Thus, the jury, as fact-finder, assessed the weight of this evidence, as presented at trial, and was free to accept or reject Appellant's theory that his actions were the result of his mental health impairment. Clearly, the jury rejected Appellant's theory in favor of the Commonwealth's articulation of the events and concluded that the evidence of Appellant's mental health problems

_____

[5] Appellant testified that he was diagnosed with paranoid schizophrenia, bipolar disorder, and depression; that his symptoms included hearing voices, having suicidal ideations, and experiencing manic states of unconsciousness; that he was hospitalized on several occasions and at multiple psychiatric institutions; that he was prescribed medications for these mental health problems; and that he was suffering a mental health crisis at the time of this incident. Appellant failed, however, to include any evidence to support his self-serving testimony, such as mental health records, hospitalization or diagnostic reports, or even documentation or witnesses from September 18-19, 2019 that would corroborate his view of the circumstances leading to his admission to Uniontown Hospital.

did not outweigh the circumstantial evidence inferring that Appellant's actions were intentional. The evidence was not so tenuous, vague, or uncertain as to shock the conscience of the court. This Court may not reweigh the evidence; therefore, Appellant's claim is unavailing.

Appellant's last issue, claiming that the trial court erred in failing to order a PSI report and mental evaluation or state sufficient reasons for dispensing with the PSI report prior to imposing sentence, challenges the discretionary aspects of sentencing.[6]

When an appellant challenges the discretionary aspects of a sentence, the right to appeal is not absolute. *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Instead, before this Court can address the merits of such a challenge, we must determine whether the appellant invoked this Court's jurisdiction by satisfying a four-part test. *See Commonwealth v. Luketic*, 162 A.3d 1149, 1159-1160 (Pa. Super. 2017) (stating, "[o]nly if the appeal satisfies these requirements may we proceed to decide the substantive merits of [an a]ppellant's claim").

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see*

---

[6] Appellant also argues that the trial court failed to fully consider the sentencing factors under 42 Pa.C.S.A. § 9721(b). Because Appellant did not raise this issue in his concise statement pursuant to Pa.R.A.P. 1925(b), he waived this aspect of his claim. *See Commonwealth v. Scott*, 952 A.2d 1190, 1191 (Pa. Super. 2008) (issues not raised in a Rule 1925(b) concise statement are waived).

Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, [*see*] Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, [*see*] 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Griffin*, 65 A.3d 932, 935 (Pa. Super. 2013) (citations omitted).

In the instant case, Appellant filed a timely notice of appeal, properly preserved his claims by filing a post-sentence motion, and included a Rule 2119(f) statement in his brief. **See** Appellant's Brief at 15-16. Moreover, an allegation that the trial court imposed the appellant's sentence without stating adequate reasons for dispensing with a PSI report raises a substantial question. **See Commonwealth v. Kelly**, 33 A.3d 638, 640 (Pa. Super. 2011); **Commonwealth v. Goggins**, 748 A.2d 721, 728 (Pa. Super. 2000) (*en banc*) (reasoning that "[s]uch a claim raises a substantial question because it avers that the court imposed sentence without considering sufficient and accurate information about the defendant"). Accordingly, we will address the merits of Appellant's claim.

The Pennsylvania Rules of Criminal Procedure, Rule 702, grants a sentencing court discretion in ordering a PSI report; however, "[t]he sentencing judge shall place on the record the reasons for dispensing with the [PSI] report if the judge fails to order a [PSI] report" in instances including,

*inter alia*, when the applicable sentencing statutes allow the possibility of incarceration of at least one year. Rule 702(A)(1), (A)(2)(a).[7]

> The first responsibility of the sentencing [court] is to be sure that [it] has before [it] sufficient information to enable [it] to make a determination of the circumstances of the offense and the character of the defendant. Thus, a sentencing [court] must either order a PSI report or conduct sufficient presentence inquiry such that, at a minimum, the court is apprised of the particular circumstances of the offense, not limited to those of record, as well as the defendant's personal history and background …. The court must exercise 'the utmost care in sentence determination' if the defendant is subject to a term of incarceration of one year or more.
>
> To assure that the trial court imposes sentence in consideration of both 'the particular circumstances of the offense and the character of the defendant,' our Supreme Court has specified the minimum content of a PSI report. The 'essential and adequate' elements of a PSI report include all of the following:
>
> > (A) a complete description of the offense and the circumstances surrounding it, not limited to aspects developed for the record as part of the determination of guilt;
> >
> > (B) a full description of any prior criminal record of the offender;
> >
> > (C) a description of the educational background of the offender;
> >
> > (D) a description of the employment background of the offender, including any military record and including his present employment status and capabilities;

---

[7] Clearly, Appellant's convictions allowed the possibility of incarceration for at least one year under the applicable sentencing statutes where his convictions included a second-degree felony (aggravated assault), which is punishable by up to ten years' incarceration. **See** 18 Pa.C.S.A. § 106(b).

(E) the social history of the offender, including family relationships, marital status, interests and activities, residence history, and religious affiliations;

(F) the offender's medical history and, if desirable, a psychological or psychiatric report;

(G) information about environments to which the offender might return or to which he could be sent should probation be granted;

(H) supplementary reports from clinics, institutions[,] and other social agencies with which the offender has been involved;

(I) information about special resources which might be available to assist the offender, such as treatment centers, residential facilities, vocational training services, special education facilities, rehabilitative programs of various institutions to which the offender might be committed, special programs in the probation department, and other similar programs which are particularly relevant to the offender's situation;

(J) a summary of the most significant aspects of the report, including specific recommendations as to the sentence if the sentencing court has so requested.

While case law does not require that the trial court order a [PSI] report under all circumstances, the cases do appear to restrict the court's discretion to dispense with a PSI report to circumstances where the necessary information is provided by another source. Our cases establish, as well, that the court must be apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725-726 (Pa. Super. 2013) (corrections omitted), *quoting Goggins*, 748 A.2d at 728. The mandates of Rule 702 emanate "from the imperative of individualized sentencing; each person sentenced must receive a sentence fashioned to his or her individual needs." *Commonwealth v. Flowers*, 950 A.2d 330, 334 (Pa. Super. 2008).

Therefore, at a minimum and even without a PSI report, basic sentencing information must include the following:

(1) education – highest grade completed;

(2) occupation and employment history;

(3) marital status;

(4) children;

(5) the official version of the offense;

(6) the defendant's version of the offense;

(7) a social hereditary history, including family background, living situation, *etc.*;

(8) physical and mental health;

(9) drug or alcohol use;

(10) military history;

(11) financial status;

(12) role of religion in the defendant's life;

(13) hobbies and leisure activities;

(14) sources of this information; and,

(15) an evaluation by the presentence investigator.

***Commonwealth v. Monahan***, 860 A.2d 180, 184-185 (Pa. Super. 2004).

Instantly, Appellant was sentenced two days after his trial. Prior to the imposition of sentence, Appellant's counsel requested that the trial court continue sentencing to conduct a PSI and mental health evaluation "so that the [c]ourt can consider [Appellant's] mental illness, which [] was predominantly featured through the trial." N.T. Sentencing, 7/10/20, at 4.

Appellant's counsel argued, "[w]e didn't have any medical records introduced into evidence[,] and I don't think the [c]ourt has the benefit of medical records in making a sentencing determination." *Id.* The trial court denied Appellant's request on the basis that Appellant was incarcerated since September 19, 2019, the court was unaware of any prior examination request, and "[o]ther than [Appellant's] testimony, there is nothing of record during the trial that would indicate any mental issue with him." *Id.* at 5. Appellant's counsel pressed further, to "at least" request records from Fayette County Prison which would show that Appellant was prescribed "very powerful psychotropic medication" and other indicia of Appellant's mental health problems. *Id.* The trial court again denied the request and proceeded to impose Appellant's sentence. Notwithstanding that it denied Appellant's request for a PSI report moments prior, the trial court included in its reasons for sentence that it purportedly considered a PSI report prepared by the Fayette County Adult Probation Office. *See id.* at 7.

Appellant argues that the trial court erred in failing to order a PSI, including a mental health evaluation, and in failing to provide adequate reasons for dispensing with the investigation. Appellant's Brief at 24. Appellant claims that because the trial court sentenced him just two days after trial, it did not have sufficient information concerning his personal history, family history, lifelong struggles with mental illness, and rehabilitative needs. *Id.* at 25. Citing *Goggins*, Appellant argues that the court's inquiry at

- 15 -

sentencing is not restricted to evidence adduced at trial and the PSI report would have revealed additional information pertinent to Appellant's background and mental health. *Id.*

We agree. Here, the trial court failed to order a PSI report, and its perfunctory reasoning for dispensing of the report falls far short of the requirements of Rule 702. To the extent that the trial court made a passing reference to a purported PSI report at sentencing, the existence of such report is not supported by the certified record. No PSI report is contained in the certified record nor is one documented on the trial court docket as being ordered, conducted, filed, or sent to the parties. For purposes of appellate review, what is not of record does not exist. *See Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa. Super. 2008). Moreover, the trial court's observation that there was no indication, at trial, of Appellant's mental health issues is unsupported. The entire trial revolved around the existence and effect of Appellant's mental health issues. Appellant's mental health problems caused his initial hospitalization, necessitated the transport during which the assault occurred, and encompassed the entirety of Appellant's defense strategy. Stated plainly, Appellant's mental health and its effect on him was **the** material fact in issue. The trial court's refusal to acknowledge overwhelming record evidence recognizing the existence of Appellant's mental health issues is untenable.

The trial court's failure to order a PSI report may nevertheless be harmless where a review of the record demonstrates that the trial court conducted sufficient inquiry such that it "was apprised of comprehensive information to make the punishment fit not only the crime but also the person who committed it." *Commonwealth v. Finnecy*, 135 A.3d 1028, 1032 (Pa. Super. 2016). There is no indication that the trial court conducted such an investigation here. Rather, the record shows that the trial court sentenced Appellant "without obtaining even the most basic personal information necessary to enable it to craft a sentence tailored to [Appellant's] individual and rehabilitative needs." *Kelly*, 33 A.3d at 642. As we conclude that the trial court's sentence constituted an abuse of discretion; we are constrained to vacate Appellant's judgment of sentence and remand for resentencing "on the basis of a PSI report or a comprehensive colloquy that offers the functional equivalent of the information a PSI report would otherwise provide." *Flowers*, 950 A.2d at 334.

Relatedly, we conclude the trial court abused its discretion in failing to order and consider a mental health evaluation of Appellant before imposing sentence. *See Kelly*, 33 A.3d at 642 (criticizing the trial court for declining to order a psychiatric evaluation where one was requested and concerns regarding the appellant's mental health were raised on the record). As highlighted above, litigation over the extent and effect of Appellant's mental health issues permeated the entire trial. Nevertheless, no mental health

- 17 -

evaluation or documentation appears in the certified record.  While the burden to present this evidence at trial is on the defendant and his counsel, the onus is on the trial court to be fully apprised of all relevant information pertaining to the circumstances of the offense, Appellant's background, and Appellant's mental health issues when imposing an informed and individualized sentence tailored to Appellant's unique needs.   On remand, the trial court must thoroughly evaluate Appellant's mental health in conjunction with all of the "basic sentencing information" cited in **Monahan** and **Carrillo-Diaz**, **supra**.

Convictions affirmed. Judgment of sentence vacated.  Case remanded for resentencing with instructions.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  3/11/2022